Marvin K. HAMMON, et al., Plaintiffs,

v.

Sharon Pratt KELLY, et al., Defendants.

Civ.A. Nos. 84–0903 (CRR), 85–0782 (CRR).

United States District Court, District of Columbia.

April 8, 1994.

**12**

Jeremiah A. Collins, George H. Cohen, Robert M. Weinberg, Jeremiah A. Collins, and Patricia Polach, of Bredhoff & Kaiser, Washington, DC, for Byrne plaintiffs.

Joan A. Burt, Washington, DC, for Hammon plaintiffs.

George C. Valentine, Asst. Corp. Counsel, together with John Payton, Corp. Counsel, Robert Mallet, Principal Deputy Corp. Counsel, and Martin L. Grossman, Deputy Corp. Counsel, for the Dist. of Columbia.

## MEMORANDUM OPINION

CHARLES R. RICHEY, District Judge.

After years of litigation relating to this case, the Court finally finds itself in a position to rule on the last few issues raised in connection with the efforts of the parties and the Special Master to implement the terms and conditions of the 1990 Settlement Agreement and Consent Decree. By the following Opinion and Order, the Court thus sets forth its determination as to the proper distribution of the money remaining in the Hammon settlement fund (the accrued interest and the $100,000 special litigation fund).

In ruling upon both of these issues, the Court has decided to adopt the recommendations of the Special Master, Professor Stephen A. Saltzburg. In light of the substantial frustrations and extensive delays that all class members have had to endure, the Special Master has suggested that a *pro rata* distribution of the remaining money would constitute an equitable distribution of these funds. Upon careful review of the numerous submissions in this case, the arguments of counsel and various class members, the rec-

ommendations of the Special Master, the applicable law, and the entire record herein, the Court agrees that a *pro rata* distribution constitutes an equitable solution to the problem of how best to distribute the remaining funds.[1]

### BACKGROUND

The details of this case are by now very familiar to all parties involved and thus need only be briefly reviewed for purposes of addressing the matters currently before the Court.

As the Court's prior opinions have explained, this lawsuit began as a class action with the filing of *Hammon v. Barry*, Civil Action No. 84–903 on March 22, 1984. The Plaintiff class consisted of a group of African–American firefighters seeking to enforce an order of the District of Columbia Office of Human Rights, which instructed the District of Columbia Fire Department, ("the Department") to, *inter alia*, adopt an affirmative action plan. On March 8, 1985, a group of white firefighters and their union challenged implementation of this plan in *Byrne v. Coleman*, Civil Action No. 85–0872. The plan was also challenged by the United States in *United States v. District of Columbia*, Civil Action No. 85–797. The cases were then consolidated by the District Court in 1985.

Over the course of the five year period from 1985 through 1990, both the District Court and the Court of Appeals were heavily involved in the resolution of numerous aspects of this dispute. In 1985, the District Court held that the promotional procedures in the affirmative action plan were unlawful, but that the hiring procedures were lawful. *Hammon v. Barry*, 606 F.Supp. 1082 (D.D.C. 1985). The Court of Appeals then reviewed the hiring portion of the affirmative action plan on appeal, and reversed this Court's decision after substantial consideration. *Hammon v. Barry*, 813 F.2d 412 (D.C.Cir. 1987), *reh'g denied*, 826 F.2d 73 (D.C.Cir. 1987), *reh'g en banc granted*, 833 F.2d 367 (D.C.Cir.1987) (per curiam), *order granting rehearing en banc vacated*, 841 F.2d 426 (D.C.Cir.1988) (per curiam), *cert. denied*, 486

---

1. This Opinion shall also address the Hammon Plaintiffs' Motion to Review Material Filed Under Seal in connection with the distribution of the $3.4 million settlement fund. This should thus

effectively resolve all outstanding issues in this case, with the exception of the remaining applications for attorneys' fees.

U.S. 1036, 108 S.Ct. 2023, 100 L.Ed.2d 610 (1988). In 1988, upon remand by the Court of Appeals, the District Court again endeavored to resolve all of the remaining issues in this case.

Two years later, in 1990, the parties all agreed to refer the case to a Special Master for purposes of settlement. Eventually, as a result of concerted efforts by the Court and the Special Master, Professor Stephen A. Saltzburg, working in conjunction with counsel, a settlement acceptable to all of the parties was finally reached.

On August 20, 1990, a settlement agreement was entered into which provided, *inter alia*, for the establishment of a method designed to create future promotional opportunities within the Department. More importantly for purposes of the instant motions, the Settlement Agreement also provided for a fund of $3.5 million to be distributed to members of the Hammon class. The Settlement Agreement and Consent Decree further provided that a special litigation fund of $100,000 was to be set aside to compensate members of the Hammon class who made special contributions to the litigation. The distribution of this special litigation fund ("the special fund") is now in contention, as is the distribution of the interest that accrued on the money in the settlement fund prior to its distribution. These two issues are now pending before the Court and shall be resolved in accordance with this Court's Opinion and Order as hereinafter provided.[2]

### DISCUSSION

I. *In view of the numerous delays caused by Hammon class counsel's refusal to comply with Court orders and repeated filing of improper appeals, the Court finds that all class members have borne identifiable burdens that are fully supported by the record and are thus all entitled to share pro rata in the distribution of the $100,000 Special Litigation Fund provided for by the 1990 Settlement Agreement and Consent Decree.*

The $100,000 special litigation fund provided for in the Settlement Agreement and Con-

sent Decree was designed to compensate those members of the Hammon class who provided services to the class as a whole or who bore special burdens during the course of the litigation. The Agreement provided that distribution of the special fund would be governed by paragraphs 25 and 26 of the Consent Decree adopted by the Court on November 6, 1990. *See Hammon v. Barry*, 752 F.Supp. 1087, 1118–19 (D.D.C.1990). More specifically, the Consent Decree provided that class members who had rendered services in the litigation on their own time would be invited to submit claims to the Special Master indicating the hours worked, the services rendered, and the amount claimed. The Special Master was then to award an appropriate amount to any such claimant at a rate of $23 per hour. Moreover, special burdens borne by class members were also to be compensated upon a finding by the Special Master that the burdens were "identifiable and supported by the record." Procedurally, the Hammon Plaintiffs were to propose a schedule of payments and supporting rationales to be approved by the Special Master under a reasonableness standard.

In fashioning the Decree, the Court held that the fund could not be disbursed until any challenges to the Decree and distribution were resolved. The Decree was in fact challenged, but the Court of Appeals summarily affirmed it on August 30, 1991. *Hammon v. Dixon*, 946 F.2d 1564 (D.C.Cir.1991), *reh'g denied*, (January 28, 1992). Following this affirmance, it appeared as if the Court would then be able to proceed with the distribution of the settlement fund.

Unfortunately for all of the parties involved in this case, the process of distributing the money contained in the settlement fund has not been an easy one. Despite repeated attempts to enlist the cooperation of counsel for the Hammon class, both the Court and the Special Master have been unable to secure her assistance in the final stages of processing this case. The interests

---

2. As such, rather than detailing the entire procedural history of these two issues at this point, the following discussion shall address each matter in turn.

of justice thus now require that the Court refuse to tolerate any more delays.

**A. The Court shall no longer permit Hammon class counsel's failure to comply with Court orders, repeated filing of improper appeals, and refusal to cooperate with the efforts of the Special Master and render other forms of assistance, to further delay the determination of how the special litigation fund ought to be allocated among Hammon class members.**

For the past two years the Court has repeatedly sought to afford counsel for the Hammon class every opportunity to participate in the process of determining the proper distribution of the special fund, despite the Court's considerable concern that the delay occasioned by counsel's actions has been working to the prejudice of the Hammon plaintiffs. Regrettably, the numerous efforts made by both the Special Master and the Court to extend substantial deference to counsel for the Hammon class appear to have been to no avail. As such, the Court can no longer continue to delay the resolution of this case in the hope that counsel will eventually undertake some form of constructive participation. The history of this litigation has repeatedly demonstrated that this is at best a highly remote possibility which should no longer be permitted to delay the process of awarding the Plaintiff class their full rights under the Settlement Agreement and Consent Decree.

Indeed, as the details of this procedural history demonstrate, the Court's many endeavors to elicit assistance from counsel for the Hammon class have met with little success and more often than not have been frustrated by the filing of premature appeals and the repeated failure of counsel to comply with orders issued by this Court and by the Special Master. The following discussion thus outlines some of the difficulties the Court and the Special Master have encountered over the past two years in striving to determine the proper distribution of the settlement fund and the special litigation fund.

After the Court of Appeals for the D.C. Circuit summarily affirmed the Consent Decree on August 30, 1991 and denied the Plaintiffs' request for rehearing on January 28, 1992, this Court issued a number of orders designed to facilitate the distribution of this money. These directives were contained in Orders issued on March 31, 1992 and April 2, 1992 and provided, *inter alia*, for the Special Master to oversee distribution of the settlement fund and to determine the proper allocation of the special litigation fund.

In compliance with the Court's Orders, the Special Master issued, under seal, his report and recommendation as to the proper distribution of the special litigation fund. On the same day, however, April 9, 1992, counsel for the Hammon Plaintiffs filed an appeal of the Court's Orders of March 31, 1992 and April 2, 1992. In order to determine the effect of this appeal on the distribution of the $3.4 million settlement fund, the Court then held a hearing on April 15, 1992. Despite the inability of the Hammon class counsel to assist the Court in determining whether the appeal blocked the distribution of the money, the Court decided to err on the side of caution and stay the effect of its Orders of March 31, 1992 and April 2, 1992. *See* Order of April 16, 1992 (staying the distribution of the settlement fund, the special litigation fund, the payment to the Special Master, and the resolution of the attorney fee dispute pending a decision on the Hammon class counsel's appeal).

Thereafter, on December 15, 1992, the Court of Appeals for the District of Columbia Circuit dismissed the Hammon Plaintiffs' appeal. *Hammon v. Kelly*, 980 F.2d 785 (D.C.Cir.1992). A petition for rehearing and rehearing en banc was denied on February 17, 1993. No writ of certiorari was filed with the Supreme Court, and the 90–day period for filing such a petition expired on May 17, 1993. *See* Rule 13, Rules of the Supreme Court of the United States. Through a new series of Orders issued on June 9, 1993, this Court then reinstated its Orders of March 31, 1992 and April 2, 1992. Of particular relevance to the issue now before the Court, the Court issued an Order directing counsel for the Hammon Plaintiffs to submit a proposal to the Special Master for the disburse-

ment of the $100,000 special litigation by July 8, 1993.[3]

Unfortunately, despite the fact that the Court had stayed the effect of its orders regarding distribution of the settlement fund money pending resolution of the Hammon Plaintiffs' appeal, the Court's orders of June 9, 1993 reinstating these earlier orders did not go unchallenged by counsel for the Hammon class. On June 21, 1993, the Hammon Plaintiffs filed a Motion for Relief from Orders pursuant to Rule 60(b) of the Federal Rules of Civil Procedure, claiming that the Court's orders had to be vacated because the reference to the Special Master had expired on May 31, 1992.

Upon receipt of this Motion, the Court requested that counsel for the Byrne Plaintiffs and counsel for the District of Columbia respond promptly, which they did, filing oppositions by June 25, 1993. By Order dated June 28, 1993, the Court then denied the Hammon Plaintiffs' Motion. In so ruling, the Court found that because the resolution of the case had been delayed by the appeal filed by counsel for the Hammon Plaintiffs, the Special Master had not yet been able to complete the tasks contemplated by the Court's Order of April 1, 1992 and that his continued participation in the case was thus necessary. The Court specifically found that "on the eve of the Court's latest attempt to distribute the settlement funds, it [was] too late for the Hammon Plaintiffs' counsel to object to the Special Master's continued involvement in the case, especially because his inability to complete his assigned tasks by May 31, 1992 [was] directly attributable to the appeal filed by the Hammon Plaintiffs' counsel." *See* Opinion and Order of June 28, 1993 at 6, 1993 WL 260693.

Moreover, the Court also noted that because the Orders issued on June 9, 1993 merely reinstated the Court's previous Orders of March 31, 1992 and April 2, 1992, which had been stayed pending the Hammon Plaintiffs' appeal, the Court indicated that any further appeals would be duplicative and the Court would therefore not stay the effects of the Court's reinstated orders as issued on June 9, 1993. In support of this decision, the Court emphasized that the objections to the Special Master's continued participation in the case were invalid for three reasons: (1) the issue had already been appealed and rejected by the Court of Appeals and was untimely; (2) the Special Master's participation was specifically contemplated by the Settlement Agreement and Decree of 1990; and (3) the Special Master's continued participation was necessary to resolve the remaining disputes. Noting that there were no substantive differences between the orders, the Court indicated that it would "not permit counsel for the Hammon Plaintiffs (or any other party) to delay this case any longer with new appeals of issues which have already been through the appellate process." *See* Opinion and Order of June 28, 1993 at 10. Although clearly willing to stay the distribution of the settlement fund and the other remaining issues to be decided pursuant to the Settlement Agreement and Decree during the pendency of any appeal, the Court indicated in no uncertain terms that it would not stay the distribution merely to give the Hammon Plaintiffs a second "bite at the apple." Id. at 11.

In issuing this warning to counsel for the Hammon class, the Court also noted that the class members were far from united with respect to their positions regarding the Special Master's role in the litigation and the delayed distribution of the settlement fund. Indeed, the Court had received two submissions categorically stating that "at least 140 members of the Hammon class oppose[d] the efforts of Hammon class counsel to have the Special Master removed and delay the distribution of the $3.4 million settlement fund yet again." *See* Opinion and Order of June 28, 1993 at 10 n. 4.

---

3. More specifically, the Court's Orders directed the Special Master to prepare checks and disburse the $3.4 million settlement fund. The Court also ordered that interest on the $3.4 million be used to pay the Special Master for the Hammon Plaintiffs' portion of his services rendered through March 31, 1992. The Court then set hearing dates to address the question of the division of the Hammon Plaintiffs' interim attorney fee award, the Byrne Plaintiffs' application for attorney fees (up through March 31, 1992), Dovey Roundtree's final application for attorney fees and Joan Burt's final application for attorney fees.

Perhaps not surprisingly by this point in the case, the Court's clear indication that it would not stay the operation of its Orders of June 9, 1993 did not deter class counsel for the Hammon Plaintiffs from again seeking to disrupt and delay the distribution of this money by filing another Notice of Appeal on July 8, 1993. The subjects of this appeal were the Court's Orders entered on June 9, 1993 and "reinstated Orders dated March 31, 1992, April 21, 1992, April 2, April 9, 1992 and Order dated June 29, 1993." Once again, though, counsel's appeal was dismissed by the Court of Appeals for the D.C. Circuit.[4]

During the summer of 1993, while the Hammon Plaintiffs' appeal filed on July 8, 1993 was still pending, the Court nevertheless continued to seek the assistance of counsel for the Hammon class in the hope that she could be persuaded to assist the Special Master and the Court in determining the proper distribution of the special litigation fund. As indicated above, the Court was already in possession of the Special Master's Report and Recommendation filed under seal on April 9, 1992 concerning the distribution of the $100,000. The Court did not, however, have any recommendations from counsel for the Hammon class as to this issue.

As such, during an August 25, 1993 hearing in this case, the Court again addressed the issue of the special litigation fund. At that time, the Court noted that counsel for the Hammon class had been directed by the Court on several prior occasions to make recommendations as to the proper distribution of the $100,000 but had still not responded as of the August 25, 1993 hearing. In view of the foregoing, the Court indicated that, in the absence of any recommendations by counsel for the Hammon class, it was inclined to accept the recommendations of the Special Master, as set forth in his report to the Court filed under seal.

Thereafter, on August 30, 1993, the Court did receive, under seal, a proposal by counsel for the Hammon class containing recommendations as to the proper distribution of the $100,000 special fund. Unfortunately, counsel's submissions were insufficient and provided no assistance to the Court in determining the proper distribution of this money. As such, the Court once again found its efforts to distribute this money hampered by the actions of counsel for the Hammon class. Thus, the Court again decided to postpone deciding this issue for a brief time in order to afford counsel yet another opportunity to elaborate on her recommendations.

In making this decision, the Court was torn between two seemingly competing interests. Although anxious to facilitate the prompt resolution of this matter, the Court was even more determined to ensure that any distribution of funds be done fairly and in accordance with the dictates of the November 6, 1990 Consent Decree. As such, the Court endeavored to abide by the provisions of paragraphs 25 and 26 of the November 6, 1990 Consent Decree which provide, in pertinent part:

25. A total of $100,000 shall be set aside to compensate individual members of the Hammon class for service rendered in this litigation on their own time. Any member of the Hammon class may submit a claim to the Special Master indicating the hours worked, the service rendered, and the amount claimed. The Special Master shall award an appropriate amount to any such claimant at the rate of $23 per hour. The Hammon plaintiffs may seek to identify special burdens borne by individual plaintiffs during this litigation, and portions of the $100,000 may be allocated as compensation for these burdens. *Before any special burdens are compensated, the Special Master must find that they are identifiable and supported by the record, and that efforts have been made to assure that all members who have borne these burdens have been able to make a claim. . . .*

26. *The Hammon plaintiffs will propose a schedule of payments and supporting rationales for any payments, including payments for services rendered on an*

---

4. By Order filed December 10, 1993 in the United States Court of Appeals for the District of Columbia Circuit, the D.C. Circuit noted that the Appellants had failed to respond to the District's argument that the instant appeal was precluded by the Hammon Plaintiffs' prior appeal. As such, the D.C. Circuit treated the point as conceded and dismissed the appeal.

*hourly basis, which the Special Master will approve under a reasonableness standard.*

*Hammon v. Barry,* 752 F.Supp. 1087, 1118–19 (D.D.C.1990) (emphasis added).

Accordingly, by Order dated September 1, 1993, the Court thus found that the proposal filed by class counsel for the Hammon Plaintiffs was not sufficient to comply with the terms set forth in the Consent Decree, noting that counsel failed to provide an adequate explanation for her recommended distribution of the $100,000 fund. More specifically, counsel's surprising recommendation that compensation be awarded to a only seven claimants was largely unexplained, as counsel supplied only a very brief justification for her assertion that "[n]o other claims can be paid out of this fund." Indeed, despite the Court's Order of June 9, 1993 which specifically directed counsel for the Hammon class to "recommend [the amount] each individual claimant should receive and the reasons therefore, *including but not limited to any recommendation that a claimant receive nothing from the special litigation fund ...*" (emphasis added) and to submit such a proposal to the Special Master in accordance with the November 6, 1990 Consent Decree, counsel for the Hammon class noted only that:

> No other claims can be paid out of this fund because the activity claimed occurred prior to 1984, the claimant was reimbursed by the D.C. Fire Department administratively, or the activity was political (attending meetings, marches, etc.) or the activity was not requested by the Legal Committee or Attorney Joan A. Burt and cannot be verified.

As noted above, however, despite finding that the submissions filed by the Hammon class counsel were inconsistent with the Court's prior rulings, the Court again afforded counsel a further opportunity to participate in the process of determining how best to distribute the special litigation fund. In an effort to facilitate this process, the Court decided to send copies of the original claim forms, along with the Special Master's recommendations, to the Hammon class counsel. Counsel was thus directed to examine the documents and revise the proposed distribution accordingly.[5]

Regrettably, it appears that counsel for the Hammon class once again did not avail herself of this opportunity, making no attempt to comply with the Court's Order of September 1, 1993. Despite counsel's failure to follow the Court's instructions concerning submissions to the Special Master, Professor Saltzburg did observe the Court's order that he file a revised report as to the proper distribution of the $100,000. Upon review of the "Special Master's Report Under Seal Regarding Special Fund," it is clear that the failure of Hammon class counsel to comply with this Court's orders once again impeded the efforts of both the Court and the Special Master to achieve an appropriate resolution of this matter. As the Special Master reported:

> Contrary to the Court's Order, Hammon class counsel has provided no revised verified application for the disbursement of the $100,000 special litigation fund in compliance with paragraphs 25 and 26 of the Court's Decree of November 6, 1990, no amounts that each individual claimant should receive, no explanation of why a claimant should or should not be paid a portion of the $100,000, no justification for the amount of any payment, and no documentation that supports any recommendation. *In short, there is total noncompliance with the Court's September 1, 1993 Order.*

*See* Special Master's Report Under Seal Regarding Special Fund at 2.

In addressing the issue of counsel's non-

---

5. More specifically, the Court's Order of September 1, 1993 provided that counsel for the Hammon class would review the claims forms and then submit a revised verified application for the disbursement of the $100,000 to the Special Master, under seal, on or before 4:00 p.m. on September 24, 1993. Pursuant to the same Order, the Special Master was then directed to review counsel's proposed distribution and make an ap-

compliance, the Special Master speculated[6] that her failure to comply with the Court's Order of September 1, 1993 might be related to the filing of an appeal of that order with the Court of Appeals for the D.C. Circuit. In rejecting the validity of such an excuse, the Special Master then noted that the Court's Order of September 1, 1993 was not the proper subject of an appeal and therefore concluded that "the Court may proceed to render a final order with respect to the $100,00 special fund." *See* Special Master's Report Under Seal Regarding Special Fund at 2–3.

■ Upon its own review of the record, the Court notes that the Special Master was correct in assuming that counsel for the Hammon class had filed an appeal from this Court's Order of September 1, 1993. Indeed, on September 29, 1993, counsel for the Hammon Plaintiffs filed a Notice of Appeal challenging this Court's Orders of August 30, 1993,[7] September 1, 1993,[8] September 17, 1993,[9] and September 24, 1993.[10] Although this appeal is apparently still pending before the Court of Appeals, this Court agrees with the Special Master that its filing should not be used to further delay the process of determining how best to distribute the special litigation fund. Counsel's appeal of the Court's September 1, 1993 Order (relating to the distribution of the special fund) was both duplicative and groundless and the Court had already indicated that such frivolous appeals would no longer be permitted to delay the distribution of this money. Substantively, the September 1, 1993 Order was quite similar to the other orders whose appeals by the Hammon Plaintiffs were dismissed by the Court of Appeals.

Perhaps even more importantly, the Court notes that the challenged Order was in fact quite unnecessary to the final resolution of this case and its appeal ought therefore not be used to further delay these proceedings. Indeed, the September 1, 1993 Order was issued solely to afford counsel for the Hammon Plaintiffs one further opportunity to properly participate in determining how the special fund ought to be allocated. It would be both ironic and highly unfair if the Court's willingness to accommodate Hammon counsel by giving her an additional opportunity to revise her proposed distribution could then be used by counsel as a basis to further delay and disrupt these proceedings. The Court is unwilling to allow counsel to take advantage of the deference she has been shown by

propriate recommendation to the Court by October 15, 1993.

6. Although he was not notified of any appeals, the Special Master indicates that he learned from other parties in the case that counsel for the Hammon class had in fact filed additional appeals from orders of this Court. As the following discussion reveals, counsel did in fact file such an appeal from the Court's Orders dated August 30, 1993, September 1, 1993, September 17, 1993, and September 24, 1993.

7. The Court's Order of August 30, 1993 ordered the Special Master to direct the Industrial Bank of Washington to issue checks to Ms. Joan Burt in the amount of $100,000 and to Ms. Dovey Roundtree in the amount of $50,000. Pursuant to that same order, the District of Columbia was also ordered to pay $9,041.00 to Ms. Roundtree in settlement of her final attorney fee application. Ms. Burt was then ordered to submit a final application for fees and expenses by October 15, 1993, with the District's opposition due on November 5, 1993 and Ms. Burt's reply due on November 12, 1993. The Court notes, however, that Ms. Burt has not submitted such an application.

8. The September 1, 1993 Order gave counsel for the Hammon class an opportunity to submit a revised verified application for the disbursement of the $100,000 special litigation fund and to file the same with the Special Master on or before September 24, 1993. Pursuant to this same order, the Special Master was then directed to evaluate the proposed disbursement and file a Report under seal with the Court on October 15, 1993. As indicated above, Professor Saltzburg complied with this order, despite the fact that he received no revised proposal from counsel for the Hammon class.

9. The Court's Order of September 17, 1993 requested information from all parties to this case concerning the status of a petition filed by members of the Hammon class and the proper distribution of the interest earned on the money deposited in the settlement fund. Both of these issues are dealt with more fully below.

10. The Court's Order of September 24, 1993 referred the Defendants' Motion for Reconsideration, which was ultimately resolved by this Court's Opinion and Order of December 14, 1993, to the Special Master for his preparation of an appropriate Report and Recommendation.

permitting this latest appeal to delay these proceedings any further.

In so holding, the Court further takes note of the fact that the circumstances recounted by the Special Master with respect to the Court's Order of September 1, 1993 clearly do not constitute the first time that counsel for the Hammon class has failed to cooperate with efforts designed to effect the distribution of the special litigation fund. Not only has class counsel repeatedly frustrated the Court's efforts to process this matter through the filing of numerous appeals and the failure to comply with Court orders as indicated above, but there is also substantial evidence that counsel has repeatedly refused to render assistance to the Special Master.

The Special Master's Report Under Seal Regarding Special Fund details the numerous efforts made by Professor Saltzburg, dating back to the fall of 1991, to obtain recommendations from the Hammon class counsel with respect to the proper distribution of this money. In detailing his efforts to obtain a proposed schedule, the Special Master notes that upon receipt of claim forms from class members he "proceeded diligently to place them in order, summarize them, provide copies to Hammon class counsel, and to request in writing that counsel for the Hammon class suggest a proposed schedule of payments and rationales as required by paragraph 18 of the settlement agreement." Yet, "[d]espite the Special Master's repeated efforts to spur counsel for the Hammon plaintiffs to suggest a schedule, she declined to do so." In fact, the Special Master even "made the extra effort of summarizing for counsel every single special claim and preparing a special form for counsel's ease in responding to his request that counsel indicate her position with respect to each claim." *See* Special Master's Report at 4–6.

The Court greatly appreciates the extensive efforts made by the Special Master to contact counsel for the Hammon Plaintiffs regarding this matter and finds that counsel's repeated failure to cooperate can no longer be tolerated. Perhaps even more importantly, the Court recognizes the extraordinary patience shown by members of the Hammon class who have been adversely affected by these delays and believes that justice now requires that these delays not be permitted to continue any longer.

As indicated above, the frustration of certain class members has from time to time been brought to the attention of the Court by the filing of petitions signed by various members of the Hammon class. More specifically, the Court has recently received several letters from class members relating to the distribution of this remaining money and directly addressing the actions of class counsel. On September 15, 1993, the Court received in chambers a petition dated August 16, 1993, accompanied by a letter from Gamelia C. Jackson [11] requesting, *inter alia*, that the $100,000 special litigation fund be distributed among all class members. The basis for the petitioners' request was that all class members were deprived of their funds during the pendency of the many appeals filed by Joan Burt "for reasons which did not benefit the majority of the Class Members." The petition emphasized that "[f]or over three years the Petitioners suffered hardship," and thus also requested that the Court "appoint an Attorney Pro–Bono Publico to protect the interest of the Class Members who do not agree with the actions of Joan Burt, ESQ." In conclusion, the petition stated that "[d]ue to the many problems the Class has had with Joan Burt, ESQ. filing appeals and the lack of information to the class, we do not trust Joan Burt, ESQ." [12] By letter dated September 27, 1993, Gamelia C. Jackson echoed

---

**11.** The Court notes that Chief Jackson previously corresponded with the Court in June of 1993, submitting a petition containing the names of Hammon class members who wished to voice their objections to Ms. Burt's appeal of this Court's Order to distribute funds to the Hammon class. The Petitioners, whose concerns were brought to the attention of the Honorable Chief Judge Mikva of the United States Court of Appeals for the District of Columbia Circuit also emphasized that they did not agree with Ms. Burt's efforts to remove the Special Master from this case.

**12.** The petition also requested that the Special Master be permitted to distribute the interest accumulated from the Hammon class settlement fund.

the concerns expressed in the August 16, 1993 letter.[13]

Upon receipt of these letters, the Court again sought to obtain the additional information necessary to resolve the issues raised therein. Accordingly, the Court elected to treat the Petitioners' request as a Motion, which would be denied, without prejudice, until the Court could receive further advice from all parties concerned, including Joan A. Burt, Esq. By Order dated October 12, 1993, the Court thus directed Joan A. Burt, Esq. to file a written response to the aforementioned letters on or before October 18, 1993, and the authors of those letters were given until October 28, 1993 to respond. Ms. Burt was further directed to advise the Court as to any appeals then pending, the status thereof, and what actions the Court might take regarding the suggestions contained in the letters.

On October 15, 1993, the Court received, via fax, a Motion to Extend Time from Hammon class counsel. Despite the many delays already occasioned by counsel's actions in this case, the Court took note of counsel's representations that she had been coping with both a family emergency and a medical emergency and then granted Ms. Burt an extension of time to respond to the Court's Order of October 12, 1993 until November 5, 1993.[14] Notably, the Court chose to grant counsel this extension despite indications contained within the Motion itself suggesting that counsel might not provide the sort of informational assistance sought by the Court.[15]

On November 4, 1993, Ms. Burt did in fact file the "Hammon Response to Letters of Gamelia C. Jackson". Unfortunately, counsel's response contained wholly unsubstantiated assertions, many of which were patently false and all of which were largely unhelpful to the resolution of these issues. Notwithstanding Mr. Jackson's membership in the class as verified by the Special Master, counsel's response stated that Mr. Jackson had no standing as "[h]e is not an attorney ... is not a Hammon plaintiff and does not represent any member of the Hammon class." [16] Counsel suggested that Mr. Jackson and other signatories to the petition be permitted to produce documentation to show that they fall within the legal requirements for class membership [17] and noted that "[w]hile the Hammon plaintiffs do not oppose Mr. Jackson ... [they] ask the Court to proceed with caution in order to prevent a fraud on the Court." Finally, counsel argued that even if Mr. Jackson were found to have standing to raise these issues, counsel believes there is no merit to his suggestions.[18]

13. This letter also requested that the Special Master and the Industrial Bank of Washington be paid any administrative costs from the interest and that the remainder of the interest be distributed to class members. The letter also raised allegations that certain class members were being victimized by retaliatory efforts aimed at "silencing" those who disagreed with the actions of Joan Burt.

14. Gamelia Jackson and the signatories to the petition were given until November 12, 1993 to respond thereto.

15. Indeed, counsel noted that she had appealed *all* of the Court's orders in this case and suggested that she knew of no actions the Court could take in response to the suggestions contained in the letters filed by Gamelia Jackson, as she alleged that they were "presented by an individual who has no representative capacity or status in the *Hammon* case and includes a petition apparently signed by non-*Hammon* class members who cannot be identified on the face of the petition." Counsel also urged the Court to note that each subsequent petition contained fewer

signatures and should be stricken from the record.

16. Counsel further asserts that Mr. Jackson never complained of racial discrimination during his employment with the D.C. Fire Department and never responded to any of the questionnaires distributed by the Litigation Committee of the Progressive Fire Fighters Association. Counsel then claims that her first interaction with Mr. Jackson came in 1986 when she informed him that she could not represent him because his interests were "inimical to those Hammon class members who where seeking 'rightful place' in future promotions." Ms. Burt has reason to believe that he then sought and met with independent counsel.

17. Hammon class counsel suggests that procedures the Hammon plaintiffs proposed to "close the class" have not yet been implemented.

18. Ms. Burt argues that the payment of any interest should await a formal accounting of any funds paid thus far, particularly since Hammon plaintiffs lack access to the documents under

By letter dated November 1, 1993, Mr. Jackson indicated his intent to file an opposition by the Court-ordered deadline of November 12, 1993.[19] In so doing, Mr. Jackson echoed the same sentiments of distrust previously voiced with respect to Ms. Burt's actions and her unwillingness and lack of ability to represent the entire class rather than merely a few select individuals. Mr. Jackson further alleged that counsel threatened him, and others, with the loss of any claims they might have if they were to sign a petition opposing her appeal.

On February 18, 1994, the Court received another letter from Gamelia C. Jackson, Battalion Fire Chief, responding to the representation that he and "the class members who signed the various petitions or letters were not actual members of the Hammon class." Mr. Jackson certifies that he and all of the signatories to the petitions are members of the class. The letter filed on February 18, 1994 then reiterates the opposition previously expressed concerning the "appeals and other tactics of attorney Joan Burt" and raises suspicions as to the nature of the relationship between Ms. Burt and a few select firefighters. More specifically, the author states that most of the class members are "tired of the delays they have caused and of the false information they have distributed about the case." The author concludes by stating that the class members are "just glad that the Court has honored the settlement and pray that the Court will be able to distribute the remaining money fairly."

In short, as the history of this case so clearly demonstrates, the interests of justice now require that the Court proceed with the task of ruling on the proper distribution of the special litigation fund. Hammon class counsel's numerous, duplicative appeals can no longer be permitted to delay distribution of this money. The D.C. Circuit has twice ruled that these appeals must be dismissed, and the District Court put counsel on notice that future such appeals would not be permitted to stay the effects of the Court's orders. Counsel has also been provided with innumerable opportunities to participate in the determination of how this money should be distributed. Her failure to cooperate in providing information and assistance is nothing short of inexcusable and the Court is equally dismayed by the few, wholly inadequate submissions she has provided. Finally, the Court takes note of the frustrations expressed by Gamelia Jackson and the signatories to the various petitions submitted to the Court and believes that the concerns expressed therein are well-founded.[20]

Having thus determined that counsel's appeals should no longer be permitted to delay resolution of this issue and having similarly concluded that counsel has been given more than an adequate opportunity to participate in this process, the Court shall now proceed to evaluate the Special Master's Report and Recommendation in making a final determination as to the proper distribution of the special fund.

seal. As indicated above, these two issues are addressed more fully below.

19. Mr. Jackson notes that he did not receive a copy of counsel's motion for additional time and questioned whether he would receive a copy of her official response to the Court. The Court has no information as to whether Mr. Jackson received a copy of Hammon counsel's response or not, but received on February 18, 1994 a letter responding to many of the allegations raised by counsel therein.

20. The Court need not concern itself with Hammon class counsel's claims that Mr. Jackson and many signatories to the petitions are not in fact members of the Hammon class. Not only has the Special Master verified that Mr. Jackson is in fact a member of the class, but Professor Saltzburg has also independently evaluated and recommended the suggestions made by the petitioners. Accordingly, the Court need not even consider the "source" of this recommendation or the question of whether Mr. Jackson has "standing" to raise these issues—the Special Master has recognized the merit to their proposal and the Court need only thus consider Professor Saltzburg's recommendation.

**B. The Court finds that all of the members of the Hammon class have borne a heavy burden that is both identifiable and supported by the record as a result of the more than two year delay caused by Hammon class counsel, and the Court thus adopts the Special Master's recommendation that all class members should receive a *pro rata* share of the $100,000 special litigation fund.**

██ In reviewing the Special Master's Report Under Seal Regarding the Special Fund, the Court notes that Professor Saltzburg has made two alternative recommendations as to this issue, both of which derive from his recognition of the "enormous delays caused by Hammon class counsel and her intransigence in the face of numerous requests that she simply honor the terms of the settlement and the Court's Decree and Order." *See* Special Master's Report Under Seal Regarding Special Fund at 10. The Court further notes that the Special Master's recommendations are also correctly predicated on a finding that "no rationale would justify the recommendations of Hammon class counsel." *Id.* at 10. As the Special Master explains, neither he nor the Court has been "provided with documentation sufficient to justify the recommendations made by counsel for the Hammon plaintiffs [that seven claimants receive the entire $100,000, and that two claimants receive between them more than $77,000]. And, counsel for the Hammon plaintiffs has provided no rationale for denying some of the claims made by members of the class." *See* Special Master's Report at 6. As such, the Court agrees with Professor Saltzburg that, in the absence of any documentation or supporting rationale, the Special Master can not approve counsel's recommendations as "identifiable and supported by the record." *Id.* at 7.

In view of the foregoing, the Court could adopt the recommendations previously filed under seal by the Special Master on the basis that "no showing has been made that those recommendations are not fair or equitable." Under the circumstances of the case, however, the Court believes that all members of the class should share in the distribution of the special fund on a pro rata basis. The Court adopts this simple solution set forth in the Special Master's second alternative course of action in the belief that it represents the most equitable and efficient means of distributing the money in question.

In adopting the recommendation initially proposed by the Hammon class petitioners, the Special Master urges the Court to find that "as a result of the delay caused by the repeated attempts by Hammon class counsel to prevent class members from receiving the money to which they were entitled for more than two years, all members of the class have borne a heavy burden." As the preceding discussion makes clear, the Court believes that there is ample evidence in the record to find that the entire class has in fact suffered such an identifiable burden.

The Court further finds that the extent to which this delay has burdened individual class members can be reasonably well estimated by distributing the money on a pro rata basis. In other words, all members would share in the $100,000 by receiving a pro rata distribution of that amount based upon the amount each received of the $3.4 million previously distributed from the settlement fund. As the Special Master suggests, this is an "equitable way of recognizing that the more a claimant would have received, the greater his or her burden was in waiting for payment." *See* Special Master's Report at 10 n. 3.

Although the Court recognizes that the Settlement Agreement and Consent Decree clearly contemplated that the money would be disbursed on the basis of more individualized calculations of the sort included in the Special Master's Report filed under Seal on April 9, 1992, the circumstances of this case render the pro rata method of distribution a better approach to the problem of how best to disburse this money. In undertaking his initial evaluation of the claim forms he received relating to the special fund, the Special Master quickly realized that the claims made amounted to far more hours than could possibly be compensated at the $23/hour rate provided for in the Settlement Agreement and Consent Decree. Thus, the Special Master determined that there was an unavoid-

able need to ration available funds and thereby proposed a distribution that appeared both equitable and fair in light of the submissions received by all claimants. In view of the fact that no distribution could possibly conform to all of the technical requirements set forth in the consent decree, the Court finds that the Special Master acted appropriately in seeking to propose a distribution that would be fair and equitable under the circumstances. Moreover, in the absence of any properly documented recommendations to the contrary, the Court believes that an equitable distribution seeking to account for the hardships occasioned by the many appeals filed by Ms. Burt represents the most appropriate solution to this problem.

In short, the Court agrees with the Special Master's finding that the special fund should be disbursed on a pro rata basis in order to compensate all members of the Hammon class, as all have suffered as a result of the actions of class counsel that have delayed the distribution of this money for over two years. In adopting this recommendation, the Court notes that the Special Master has essentially accepted the position set forth in the Gamelia Jackson letters and accompanying petitions, endorsing the underlying rationale to the extent that this solution effectively means that those class members most disadvantaged by delays shall receive the greatest share of the fund. The Special Master has basically found that all class members have borne "identifiable special burdens" in view of the numerous appeals filed by Ms. Burt and counsel's repeated failure to cooperate with efforts to determine the appropriate distribution of this money. The Court thus adopts the Special Master's recommendation that the special fund be disbursed on a pro rata basis so that all class members will be compensated for the burdens they have endured due to the actions of class counsel.

II. *The Court agrees with the Special Master that, after the remaining fees and expenses are paid, it is both fair and equitable to distribute the rest of the interest on a pro rata basis according to the amount class members received from the $3.4 million settlement fund.*

■ During the course of this lengthy litigation, the money set aside to compensate members of the Hammon class has accrued a considerable amount of interest. The Special Master has informed the Court that approximately $353,000 in interest remain and, after careful consideration, the Court has decided to adopt his recommendation as to how this money ought to be distributed.

Essentially, in making this determination the Court has been guided by the same principles as set forth above that were used to govern the distribution of the special litigation fund. By Order dated September 17, 1993, the Court informed all parties of the letter and petition sent to chambers by Gamelia C. Jackson requesting distribution of the interest and the $100,000 special litigation fund. Subject to the same delays and appeals referenced above with regard to the distribution of the special litigation fund, counsel for the Hammon class eventually responded to the Court by arguing that the payment of any interest should await a formal accounting of funds thus far paid. Once again, however, the Court finds counsel's comments unhelpful and largely nonresponsive.[21] By contrast, the Special Master's recommendations appear both equitable and ap-

21. Counsel claims that the Hammon Plaintiffs' alleged lack of access to documents relating to the handling of the special fund prevent her from commenting on this issue. She further suggests that Mr. Jackson can have no greater information on the status or distribution of said fund. The Court notes that knowledge of the exact amount of interest remaining in the bank is not a necessary prerequisite to the formulation of any suggestions for its distribution. Moreover, the information to which counsel claims she lacks access concerns the special fund and not the interest. Finally, counsel was asked only to comment on the recommendation made by Gamelia Jackson that the money be distributed to all class members. At a very minimum, counsel should have been able to articulate her views on this proposal even if she felt that a lack of complete information prevented her from offering any sort of counter-proposal. As such, the Court once again finds that it has received insufficient information and documentation from counsel for the Hammon class to justify further delay of these proceedings and thus shall proceed with its evaluation of the Special Master's Report and Recommendation concerning the matter of interest.

propriate under the circumstances of this case.

The Special Master's Recommendation with respect to interest was submitted to the Court on October 13, 1993 and was later supplemented by the "Special Master's Correction of October 9, 1993 Recommendation with respect to Interest," dated February 22, 1994. The Special Master reports that there is approximately $353,000 in interest remaining in the Industrial Bank.[22] In considering how to distribute this money, the Special Master draws upon the Petition submitted by Gamelia Jackson and concludes that the proposal set forth therein represents a "sensible way of dealing with the interest." As such, the Special Master recommends that, after the remaining fees and expenses are paid,[23] "it appears both fair and equitable that the interest be distributed pro rata according to the amount class members received from the $3.4 million distribution." *See* Special Master's Recommendation with respect to Interest at 2.

Elaborating on the basis for this recommendation, the Special Master writes:

Chief Jackson's suggestion allocates the benefits and burdens to class members in a most equitable fashion. Those class members who received the most money under the settlement will end up receiving the most interest. By allocating interest according to the amount of compensation a claimant had by way of right, each claimant receives an amount of interest that is in proportion to his or her rightful claim, and the interest appropriately compensates for the delays in distribution of the $3.4 million. The benefits, therefore, are fairly allocated. So are the burdens, because the larger the share of the total interest a class member would be entitled to receive, the greater the share he or she will contribute to payment of fees and expenses. This is fair since those who have recovered the most have received the greatest benefit from the litigation and should have no fair complaint about being assessed the greatest share of the costs.

*See* Special Master's Recommendation at 2–3. The Court finds the Special Master's reasoning highly persuasive and therefore adopts his recommendation as to the distribution of the interest remaining from the settlement fund.[24]

**III.** *The Hammon Plaintiffs' Motion to Review Materials Under Seal shall be denied because the Court finds that counsel for the Hammon class has already had numerous opportunities to review this information and, in light of her failure to raise any specific objections to the Special Master's calculations, cannot now assert any legitimate need to risk violating the privacy rights of individual firefighters, especially since the Court itself has already verified that the totals computed by the Special Master were correct.*

■ Apart from the question of attorneys' fees, the one remaining matter before the Court is the Hammon Plaintiffs' Motion to Review Materials Under Seal.[25] This issue

---

**22.** Some of the interest was previously used to pay the Special Master's fee for services rendered as of March 31, 1992 and some was also used to compensate the Industrial.Bank for distributing checks for the $3.4 million in the settlement fund. As the Special Master emphasized, all of the fees and expenses were paid from the interest only as "the principal $3.5 million has never been and will never be invaded."

**23.** These include the Special Master's fees after March 31, 1992 and the additional fees the Industrial Bank will charge to distribute the remaining money and 1099 Forms with respect to the interest.

**24.** In adopting the Special Master's Recommendations with respect to the distribution of both the special litigation fund and the interest re-

maining on the Hammon settlement fund, the Court notes that both the Byrne Plaintiffs and the District of Columbia take no position as to these issues. *See* Response of Byrne Plaintiffs to Order Filed September 17, 1993; Defendants' Praecipe Regarding Distribution of the Special Fund and Interest on the Hammon Settlement Fund.

**25.** With respect to the issue of attorneys' fees, the Court takes this opportunity to again note that by Order dated August 30, 1993, Ms. Joan Burt was ordered to submit a final application for attorney fees and expenses on or before 4:00 p.m. on October 15, 1993. To date the Court has received no such application from counsel.

derives from the Consent Decree's provision regarding firefighter privacy. As a result of this concern, the Special Master's calculations as to how much of the $3.4 million settlement fund each class member was entitled to were filed under seal. The Hammon Plaintiffs have filed a Motion to Review Records Material Under Seal which the District has opposed, alleging that counsel for the Hammon plaintiffs intends to show these calculations to members of the class whose interests are in conflict with those of the class as a whole. Moreover, the District argues that despite numerous opportunities to do so, counsel has failed to raise any specific objections to these calculations. As such, upon review of the Motion and the Opposition thereto, the Court finds that the Hammon Plaintiffs' Motion must be denied.

On July 8, 1993, counsel for the Hammon Plaintiffs filed a Motion to Review Materials Under Seal. Counsel specifically requested permission from the Court to review "all claims forms, correspondence and other material relevant to claims made by members of the Hammon class and provided to the Court, under seal, by the Special Master pursuant to the Orders of the Court ..." *See* Hammon Plaintiffs' July 8, 1993 Motion at 1.

In filing this Motion, counsel for the Hammon class alleges that many errors were made in the distribution of the $3.4 million contained in the settlement fund. Counsel specifically complains that these errors were contained in the "computer diskette and corresponding printouts of three lists of claimants ... entitled to some portion of the $3.4 million" that were transmitted to the Industrial Bank pursuant to an Order issued by the Special Master on June 11, 1993. Although counsel does not directly cite the basis for these assertions, it appears that her allegations stem from correspondence and complaints that she received from those whose claims had been disallowed.[26] Counsel claims that the placement of such material under seal violates the rights of Hammon Plaintiffs as set forth in Part A, Section 18 of the August 20, 1990 Settlement Agreement. Counsel further requests copies of those materials in order to comply with the Court's June 9, 1993 Order regarding the distribution of the Special Litigation Fund.

On August 12, 1993, the District filed an Opposition to the Hammon Plaintiffs' Motion to Review Material Under Seal.[27] In support of its position, the District first questions the motives of Hammon class counsel in seeking to unseal the summary of payments. The District argues that since the sealing order provided that these records would be kept confidential and only shown to the Special Master and Ms. Burt, the Defendants contend that there is no reason to relieve counsel of the limitation of the sealing order. More specifically, the Defendants fear that counsel will use this opportunity to show the summaries to specific members of the class whose interests are in conflict with those of the class as a whole.

Moreover, the Defendants argue that counsel's request amounts to nothing more than a "fishing expedition" since Ms. Burt did not object to any decision on claims submitted to the Court by the Special Master. As such, she cannot claim to need access to this information in order to mount a legal challenge to the formula for distribution or to the specific calculations undertaken by the Special Master. Nor as the Defendants point out could counsel seek to challenge the formula for distribution or calculations to which she agreed and which were approved by the Court. Thus, in view of counsel's prior access to this information and her persistent

---

**26.** Counsel argues that not only are there errors "as to who is entitled to some portion of the $3.4 million and who is not ... [but] [t]here also appear to be numerous errors in the amount to which each claimant is entitled." *See* Hammon Plaintiffs' July 8, 1993 Motion at ¶ 3.

**27.** The Court takes note of the difficulty that Defendants encountered in attempting to respond to this motion in view of the fact that Defendants' counsel was not served with a copy of the motion. Moreover, even after learning of its filing, Defense counsel was unsuccessful in obtaining a copy from counsel for the Hammon Plaintiffs. Unfortunately, as counsel for the District suggests, this is not the first time that the parties have had difficulties of this kind, all of which have further contributed to the delay in processing the many issues presented by this case.

refusal to cooperate with the Special Master, the Defendants urge the Court to deny her motion to lift the sealing order, citing the grave "danger of mischief to the interests of individual Africa–American firefighters" if this Motion were to be granted. For most of the reasons cited by the Defendants, the Court must agree that the Hammon Plaintiffs' Motion should be denied.

As the Defendants point out, counsel for the Hammon Plaintiffs has had numerous opportunities to review and comment upon each claim form and has more often than not refused to comment, verify, or render any other assistance with regard to the processing of these claims as repeatedly requested by both the Court and the Special Master. *See* Defendants' Memorandum of Points and Authorities in Opposition to Hammon Plaintiffs' Motion to Review Materials Under Seal at 5–13. As such, the Court finds that the Hammon Plaintiffs' Motion should be denied, because Ms. Burt had already been given access to this information and had been provided with more than ample opportunity to participate in the distribution process and yet had made no specific objections to the Special Master's calculations as to the distribution of the $3.4 million settlement fund. Moreover, the Court itself has verified that the totals were correct and thus can see no reason to risk endangering the privacy of individual firefighters by unsealing these records.[28]

The Consent Decree specifically provided that such protection would be afforded to each and every member of the class:

The Special Master will approve all payment made pursuant to the provisions set forth above, and the total amounts paid are, by nature of this document, public.

Except for disclosures that are required of the District under law, each member of the Hammon class shall have the right to protect the fact that he or she received payment and the amount of any payment from public disclosure, and said information shall be placed under seal by the Special Master.

Under the circumstances of this case, the Court shall not risk jeopardizing that protection. Class counsel for the Hammon Plaintiffs has offered no compelling justification for the Court to take the action requested in her motion, and, under the circumstances of the case, counsel can hardly claim that she has been unfairly denied access to this critical information. If anything, both the Court and the Special Master have repeatedly implored counsel to review these materials and have done everything in their power to elicit her comments and input. As such, the Court will not risk violating the privacy rights of the entire class absent a compelling reason, and the Court shall therefore deny the Hammon Plaintiffs' Motion.[29]

**IV.** *Nothing in Hammon Class Counsel's most recent submission to this Court alters the Court's determinations as set forth above and most of the allegations contained therein are merely recitations of the same complaints and issues that this Court has previously addressed on a variety of different occasions.*

Prior to the issuance of this Opinion, the Court received an additional pleading from attorney Joan A. Burt, entitled "Hammon Plaintiffs' Response and Opposition to Defendants' Status Report to the Court Dated March 10, 1994." The Court first notes that

---

**28.** Moreover, in view of the Court's determinations that the special litigation fund and the interest should be distributed on a pro rata basis, there is no need for counsel to review any other claim forms either.

**29.** Needless to say, the Court also questions the extent to which the views expressed by counsel as to this issue are in fact shared by all members of the Hammon class. The many petitions alluded to above filed on behalf of numerous class members express deep appreciation for the work of the Court and the Special Master in distributing the settlement fund in accordance with the

terms and conditions set forth in the Settlement Agreement and Consent Decree. Moreover, Mr. Jackson also notes that even many of those class members who were slightly disappointed with the outcome of the settlement still respect it as a binding agreement and are grateful for the Court's efforts to ensure that its terms are fully and fairly complied with. Accordingly, these representations provide even further support for the Court's determination that the rights of the Hammon class plaintiffs can be fully protected without unsealing these confidential records.

counsel's submission is not a motion and therefore technically requires no action by the Court. More importantly, the Court also wishes to emphasize that most of the arguments raised therein have already been addressed by the Court, in this and in previous opinions. However, in the interest of justice, the Court shall take this opportunity to discuss those few objections raised by this latest pleading that have not already been explicitly addressed.

Throughout this pleading, styled as a "Response and Opposition," counsel for the Hammon Plaintiffs takes issue with the Defendants' characterization of the current posture of this case. Unfortunately, counsel's "objections" appear to arise from her repeated failure to accept the legitimacy of this Court's prior rulings with regard to the many issues in this litigation. Once again, it appears that counsel for the Hammon Plaintiffs is attempting to challenge the distribution of the $3.4 million settlement fund. The Court notes, however, that counsel's contentions concerning the proper definition of a class member have previously been addressed by this Court. *See* Opinion dated June 28, 1993 n. 3.

Similarly, counsel's objection to the "invasion of the interest to pay the special master or the bank" has also been previously addressed by this Court on numerous occasions. As the Court held on April 1, 1992, "[p]roviding for the payment of the Hammon Plaintiffs' one-third share of the Special Master's fees and expenses through the interest accrued on the $3.5 million allows the Hammon class to meet its obligations *without invading the $3.5 million settlement fund itself and without unduly burdening counsel or those individual members of the class for whom class counsel has received a power of attorney.*"

The Court further notes that most of the other issues referenced in the Defendants' Status Report to which Ms. Burt has raised objections concern matters unrelated to the Hammon class, such as the Byrne Plaintiffs' application for attorneys' fees—a matter solely at issue between the Byrne Plaintiffs and the District.

As to the issue of Hammon Plaintiffs' Interim Attorney Fee Application, the Court is disturbed by counsel's contention that her filing of such applications has been "to no avail." As this Court's Order of August 30, 1993 noted, Ms. Burt was recently awarded $100,000, in addition to the $112,000 she and Karl Carter, Jr., her one-time associate, received from the District a number of years ago. Therefore, counsel has received at least $212,000 in interim attorneys' fees to the best of this Court's knowledge and belief. This Court has thus done everything possible to address counsel's applications for fees, and to the extent that "the matter of the interim fee application is pending before the U.S. Court of Appeals" as counsel asserts, there is nothing more that this Court can do.

Finally, the Court notes that counsel's pleading repeatedly suggests that the recommendations of the Special Master and the actions of the Court are not supported by "the law of the case or case law and federal statutes." The Court, however, finds no merit to counsel's claim that the Court lacks authority to deal with these issues.

Perhaps most importantly, most of the Court's decisions with regard to the implementation of the Settlement Agreement and the distribution of the settlement fund were directly authorized by the Consent Decree adopted by the Court on November 6, 1990. Moreover, to the extent that the Court's determinations deviate from those provisions, there is ample authority for the Court's continued involvement in these matters.

As the Court of Appeals for the District of Columbia recently noted, there is a "well-established principle that a trial court retains jurisdiction to enforce consent decrees and settlement agreements." *Beckett v. Air Line Pilot Ass'n,* 995 F.2d 280, 285 (D.C.Cir.1993). Moreover, the Court also has the inherent equitable authority to administer and, if necessary, make legitimate modifications to the precise terms of a consent decree. *See Firefighters Local Union No. 1784 v. Stotts,* 467 U.S. 561, 104 S.Ct. 2576, 81 L.Ed.2d 483 (1984); *Environmental Defense Fund, Inc. v. Costle,* 636 F.2d 1229, 1240 (D.C.Cir.1980). As the preceding Opinion explains, the Court finds that the recom-

mendations of the Special Master are well within the scope of his authority as provided for in the Settlement Agreement and Consent Decree; and to the extent that they deviate, if at all, from that which was contemplated at the time the Consent Decree was adopted, the Court believes that they constitute legitimate modifications well within the scope of the Court's authority under the circumstances of this case.[30]

### CONCLUSION

For all of the foregoing reasons, the Court thus finds that the special litigation fund shall be distributed pro rata among all members of the Hammon class, with each member receiving an amount based upon his or her original share of the $3.4 million settlement fund. After all fees and expenses are paid from the remaining interest, this money too shall be distributed to all class members on a pro rata basis and the Hammon Plaintiffs' Motion to Review Materials Filed Under Seal shall be denied for the reasons set forth above. The Court shall thus issue an Order of even date herewith consistent with the foregoing Memorandum Opinion.

### ORDER

Upon consideration of the submissions of the parties, the recommendations of the Special Master, the applicable law, the entire record herein, and for all of the reasons set forth in this Court's Memorandum Opinion issued of even date herewith, it is, by the Court, this 7th day of April, 1994,

ORDERED that the Industrial Bank shall be, and hereby is, directed to pay the Special Master, from the interest on the $3.5 million settlement fund, the balance of the Hammon class share of his fees and expenses from March 31, 1992 to date, in the amount of $20,403.32, which the Court determines to be fair and reasonable under the circumstances of this case; and it is

FURTHER ORDERED that the Industrial Bank of Washington may assess a reasonable administrative fee for processing the checks which are the subject of this Order, and that, subject to the approval of the Special Master, the Industrial Bank may deduct this amount from the interest on the $3.5 million settlement fund; and it is

FURTHER ORDERED that, after the Bank's expenses and the Special Master's fees and expenses have been paid, the Special Master is authorized to direct the Industrial Bank to disburse the remaining money (the $100,000 special litigation fund and the rest of the interest from the $3.5 million settlement fund) on a pro rata basis, in proportion to the amount of the $3.4 million settlement fund each class member previously received; and it is

FURTHER ORDERED that, with respect to the payments to the members of the class herein, the Special Master shall direct and order the Industrial Bank of Washington to place the following restrictive endorsement on the back of all checks: ("This check represents payment in full of any and all claims in any way pertaining to or arising out of the case of *Hammon v. Kelly*, Civil Action Numbers 84–903 and 85–782 as related to the $100,000 special litigation fund and the interest remaining on the Hammon class settlement fund."); and it is

FURTHER ORDERED that the Hammon Plaintiffs' Motion to Review Material Under Seal shall be, and hereby is, DENIED; and it is

FURTHER ORDERED that the Motion by the Hammon Plaintiffs for Public Disclosure of the Special Fund Applications and of All Powers of Attorney and Other Agreements between Counsel and Class Members shall be, and hereby is, DENIED, as it is essentially moot in view of the fact that the same were not utilized in determining the distribution of the special fund; and it is

FURTHER ORDERED that the Motion to Strike the Motion for Public Disclosure of Special Fund Applications, Etc. shall be, and

---

**30.** The Court is also in receipt of a "Motion by Hammon Plaintiffs for Public Disclosure of Special Fund Applications and of All Powers of Attorneys and Other Agreements between Counsel and Class Members" and a "Motion to Strike Motion for Public Disclosure of Special Fund Applications, Etc." In view of the determinations set forth in this Opinion and Order concerning the distribution of the special fund, the Court shall deny both motions.

hereby is, DENIED, as unnecessary in view of the preceding ordered paragraph.