Marvin K. HAMMON, et al., Plaintiffs,

v.

Sharon Pratt KELLY, et al., Defendants.

Civ. A. Nos. 84–0903 (CRR),
85–0782 (CRR).

United States District Court,
District of Columbia.

June 29, 1994.

Joan A. Burt, of Washington, DC, for Hammon plaintiffs.

Jeremiah A. Collins and George H. Cohen, of Bredhoff & Kaiser, Washington, DC, for Byrne plaintiffs.

George C. Valentine, Asst. Corp. Counsel, Vanessa Ruiz, Acting Corp. Counsel, Garland Pinkston, Principal Deputy Corp. Counsel, and Martin L. Grossman, Deputy Corp. Counsel, Civ. Div., for District of Columbia.

2

TABLE OF CONTENTS

I.  The Court reaffirms its determination as to the distribution of the $100,000 Special Litigation Fund because the Special Master's finding that all class members have borne an identifiable burden by virtue of delay is amply supported by the record and because the decision to distribute the money on a pro rata basis is not inconsistent with the Settlement Agreement or the Court's November 6, 1990 Decree and Order, but rather represents an equitable resolution of this matter. ........................................ 4

   A.  The record is undeniably clear in demonstrating that the delay in disbursing the settlement fund money was primarily attributable to counsel for the Hammon class, and in no way was due to any action or inaction on the part of the Special Master ........................................ 4

   B.  The Court's decision to distribute this money on a pro rata basis is not inconsistent with the Settlement Agreement or the November 6, 1990 Decree and Order, which both provided that the ultimate determination as to the proper distribution of this money was to be made by the Special Master—not counsel for the Hammon class ...................... 5

   C.  The record further reveals that, not only was the appropriate distribution of this money a determination committed to the discretion of the Special Master and not counsel for the Hammon class, but counsel for the Hammon class failed to even properly fulfill the role that she was expected to play in assisting the Court and the Special Master in disbursing the settlement funds ........................................ 5

   D.  Nor is there anything inappropriate about the Special Master's determination to compensate class members on the basis of burdens borne rather than hours worked or services rendered, as neither the Settlement Agreement nor the Court's Decree and Order dictated that a preference be given to one form of compensation over the other .................. 6

   E.  To the extent that the Special Master's proposed distribution of the money was not contemplated by the Settlement Agreement or the Court's Decree and Order, this is only because none of the parties to the case could possibly have anticipated the numerous delays class members have been forced to endure ............................................ 6

   F.  For all of the foregoing reasons, the Court finds that the Special Master's proposed distribution appropriately takes into account all of the circumstances present in this case and represents a just determination as to the proper distribution of the special litigation fund ....................... 7

   G.  Perhaps most importantly, the Court finds that counsel for the Hammon class has offered no reasonable alternative to the Special Master's proposed distribution, and the suggestions she has made seriously call into question her ethical obligation to fully and fairly represent *all* members of the Hammon class ........................................ 7

II. The Court rejects Hammon class counsel's claims that she has been unfairly and improperly denied access to documents under seal and notes that Ms. Burt has been provided with far greater access to information and has been given far more opportunities to participate in the distribution of the settlement fund money than was ever contemplated by the Settlement Agreement or the Court's November 6, 1990 Decree and Order. ...................... 8

III. The Court further reaffirms its determination as to the proper distribution of the interest remaining on the settlement fund, as counsel for the Hammon class has again provided no legitimate basis upon which to challenge the Court's previous ruling with respect to this issue. .......................... 9

IV. The Court further finds that there is no merit to any of the other assertions upon which counsel for the Hammon Plaintiffs seeks to base her instant Rule 52 Motion. ....................................................................9

    A. There is no merit to Hammon class counsel's suggestion that Gamelia Jackson is not a member of the class ................................9

    B. Nor would counsel's objections to Mr. Jackson's participation in the case provide any legitimate basis upon which to challenge the Special Master's recommendations, even if Mr. Jackson were not a member of the class, as Ms. Burt herself was given ample opportunity to comment on Mr. Jackson's suggestions, yet she repeatedly failed to do so or to set forth any reasonable, alternative proposals ............................10

    C. Hammon class counsel's unsubstantiated allegations that Ms. Tora Washington was improperly denied compensation under the settlement fund are also without merit, as the record reveals that it was the failure of Ms. Washington (or Ms. Burt to whom she gave power of attorney) to submit a timely claim form that resulted in Ms. Washington's failure to receive compensation from the settlement fund ........................10

    D. Counsel's contentions with respect to the question of attorneys' fees, the Court's use of the term "Consent Decree," and the inclusion of an "Appearances Page" are all both erroneous and irrelevant to the determinations set forth in the April 8, 1994 Opinion and Order, and thus clearly do not provide any support for Ms. Burt's instant Rule 52 Motion .... 11

V. Counsel for the Hammon Class has not demonstrated any need for an accounting or for a stay pending a hearing, and both requests must therefore be denied. ...............................................................11

VI. The Court finds no merit to Hammon class counsel's Motion for Relief from Orders Pursuant to Rule 60(b)(3), as counsel has not only failed to sufficiently document her allegations of fraud, but she has entirely failed to offer any coherent theory upon which to base her request for relief from the Orders of this Court. ...............................................................12

CONCLUSION ....................................................................16

APPENDIX A ....................................................................17

---

## MEMORANDUM OPINION

CHARLES R. RICHEY, District Judge.

On April 8, 1994, this Court issued an Opinion and Order resolving all of the remaining issues (with the exception of the matter of attorneys' fees) in the long and contentious history of this case 154 F.R.D. 11. Thereafter, on April 21, 1994, the Court received a document from counsel for the Hammon Plaintiffs entitled "Hammon Plaintiffs' Motion to Set Aside the Findings of the Order of April 8, 1994 and to Amend the Order Pursuant to Rule 52, F.R.C.P. and to Issue a Stay Pending a Hearing" ("Hammon Plaintiffs' Rule 52 Motion"). In response thereto, the Court has also received an Opposition from the District of Columbia ("Defendants' Opposition") [1] and a responsive plead-

---

1. The District of Columbia indicates that it is opposed to a stay, and asserts that no hearing is warranted in connection with this matter. In addition, the District takes issue with a number of Hammon class counsel's allegations which the Defendants have characterized as "inaccurate." *See* "Defendants' Opposition to Hammon Plaintiffs' Motion to Set Aside the Findings of the Order of April 8, 1994 and to Amend the Order Pursuant to Rule 52 and to Issue a Stay Pending

**4**

ing filed by counsel for the Byrne Plaintiffs ("Byrne Plaintiffs' Response").[2]

More recently, on May 25, 1994, the Court received another pleading from counsel for the Hammon Plaintiffs entitled "Hammon Plaintiffs' Motion for Relief from Orders Pursuant to Rule 60(b)(3) F.R.C.P." ("Hammon Plaintiffs' Rule 60(b)(3) Motion"). In this Motion, counsel for the Hammon class seeks relief "from orders of the Court issued from June 18, 1991 through April 27, 1992 and up to and including April 8, 1994 for reason that said orders were procured by fraud, misrepresentation and other misconduct of parties adverse to the *Hammon* plaintiffs' legal rights interests and property." *See* Rule 60(b)(3) Motion at 1.

Upon careful consideration of all of the foregoing submissions, the applicable law, the long history of this case, and the entire record herein, the Court has determined that the two Motions filed by counsel for the Hammon class must both be denied; and the Court hereby reaffirms the decisions reached in its Order of April 8, 1994.

Although the Court believes that none of the allegations raised by the Hammon Plaintiffs' Motions truly challenge any part of the Court's Opinion and Order of April 8, 1994, the Court shall once again endeavor to address each of Ms. Burt's concerns, one by one, to ensure that justice is served and that the rights of the class members are fully and fairly protected.

The Court shall first address the allegations contained in the "Hammon Plaintiffs' Motion to Set Aside the Findings of the

Order of April 8, 1994, and to Amend the Order Pursuant to Rule 52, F.R.C.P., and to Issue a Stay Pending a Hearing."[3]

**I. The Court reaffirms its determination as to the distribution of the $100,000 Special Litigation Fund because the Special Master's finding that all class members have borne an identifiable burden by virtue of delay is amply supported by the record and because the decision to distribute the money on a pro rata basis is not inconsistent with the Settlement Agreement or the Court's November 6, 1990 Decree and Order, but rather represents an equitable resolution of this matter.**

Counsel for the Hammon class first challenges the Court's determination as to the proper distribution of the $100,000 special litigation fund by arguing that this determination "should be set aside for reason [sic] that none other than a non-class member has cited an unidentified burden that cannot be supported by the record...." As the Court's Opinion of April 8, 1994 made clear, however, there is ample evidence in the record to support a finding that the entire class has suffered an identifiable burden as a result of the many delays they have been forced to endure throughout the course of this litigation.[4] The Court sees no reason to reiterate the basis for this conclusion here, as the relevant facts are fully set forth in the Court's April 8, 1994 Opinion; however, the Court shall take this opportunity to address some of the specific allegations raised by Hammon class counsel's recent filing.

a Hearing" at 1–2. The Defendants' position with respect to these issues is set forth more fully below.

2. The Byrne Plaintiffs' Response notes that the issues addressed in the Court's April 8, 1994 Opinion and Order do not affect the Byrne Plaintiffs. However, as officers of the Court, counsel for the Byrne Plaintiffs have indicated that they "do not believe it would be appropriate to remain silent while Ms. Burt misrepresents the record and engages in unfounded attacks on the Court and the Special Master." The Court appreciates counsels' efforts in submitting these

comments and believes that all parties to the case will benefit from counsels' assistance in setting the record straight.

3. The "Motion for Relief from Orders Pursuant to Rule 60(b)(3) Fed.R.Civ.P." is addressed in Part VI below.

4. Unfortunately, the Court notes that Hammon class counsel's instant Motions constitute yet another attempt to further delay the distribution of this money and to deprive class members of that to which they are properly entitled.

**A. The record is undeniably clear in demonstrating that the delay in disbursing the settlement fund money was primarily attributable to counsel for the Hammon class, and in no way was due to any action or inaction on the part of the Special Master.**

First, the Court notes that Ms. Burt's assertion that "the delay in disbursing the funds ... must be attributed to the series of rulings of the Special Master ... and the adoption of said rulings by the Court .." is entirely without merit. As the District of Columbia has suggested, the numerous, frivolous appeals filed by Hammon class counsel were "for the most part the *primary reason for the delay in distribution of the settlement funds.*" *See* Defendants' Opposition at 2 (emphasis added).

Moreover, as the Byrne Plaintiffs' counsel point out, it is a "blatant misrepresentation" for Ms. Burt to claim that there never was any need to await the disposition of any appeals before distributing the settlement funds in this case. Indeed, at one point Ms. Burt herself refused to declare that her appeals did *not* block disbursement, and, as the Byrne Plaintiffs' counsel thus note, "it is the height of hypocrisy for Ms. Burt now to blame the Court for proceeding with caution and refusing to disburse the funds while that appeal was pending." *See* Byrne Plaintiffs' Response at 2–3.

**B. The Court's decision to distribute this money on a pro rata basis is not inconsistent with the Settlement Agreement or the November 6, 1990 Decree and Order, which both provided that the ultimate determination as to the proper distribution of this money was to be made by the Special Master—not counsel for the Hammon class.**

There is also no merit to Hammon class counsel's assertion that the Court's decision to distribute this money on a pro rata basis is inconsistent with the provisions of the Settlement Agreement. As both the Settlement Agreement and the Court's Decree and Order make clear, the distribution of this money was to be determined by the Special Master, acting with the Court's authority and under its supervision. *See* ¶¶ 17–18 of the Settlement Agreement, set forth in Appendix I of this Court's Opinion in *Hammon v. Barry,* 752 F.Supp. 1087 (D.D.C.1990); and the Court's November 6, 1990 Decree and Order, 752 F.Supp. 1087, 1119 (D.D.C.1990).

Both the Settlement Agreement and the Decree and Order are clear in providing that the distribution of this money was ultimately a determination to be left to the Special Master and *not* to counsel for the Hammon Plaintiffs. Paragraph 17 of Part A of the Settlement provides that "[t]he Special Master shall have the discretion to award an appropriate amount to any such claimant [for services rendered to the class], and to distribute the $100,000 equitably among claimants." 752 F.Supp. at 1105. Similarly, Paragraph 25 of the Court's Decree and Order provides that the "[a]ny member of the Hammon class may submit a claim to the Special Master ... [and the] Special Master shall award an appropriate amount to any such claimant...."

Paragraph 25 further provides that "[t]he Hammon Plaintiffs may seek to identify special burdens borne by individual Plaintiffs during this litigation, and portions of the $100,000 may be allocated as compensation for these burdens." Paragraph 25 then provides that "[b]efore any special burdens are compensated, the Special Master must find that they are identifiable and supported by the record, and that efforts have been made *to assure that all members who have borne these burdens have been able to make a claim.*" *Id.* (emphasis added). Thus, it is clear that both the Settlement Agreement and the Court's November 6, 1990 Decree and Order unmistakably contemplated that the proper distribution of the special fund was to be determined by the Special Master and not counsel for the Hammon class.

**C. The record further reveals that, not only was the appropriate distribution of this money a determination committed to the discretion of the Special Master and not counsel for the Hammon class, but counsel for the Hammon class failed to even properly fulfill the role that she was expected to play in assisting the Court and the Special Master in disbursing the settlement funds.**

Indeed, both the Settlement Agreement and the Court's Decree and Order were

equally clear in outlining the proper role counsel for the Hammon Plaintiffs was to play in determining an appropriate distribution of this money: a role whose obligations Ms. Burt has repeatedly refused to fulfill.

Paragraph 18 of Part A of the Settlement, and Paragraph 25 of the Court's Decree and Order, 752 F.Supp. 1087, 1105, 1119 (D.D.C. 1990), provided that the Hammon Plaintiffs would propose a schedule of payments and supporting rationales for payments, including payments for services rendered on an hourly basis, and that the Special Master would approve the schedule under a reasonableness standard. Although both the Special Master and this Court made extensive efforts to obtain such a schedule from counsel for the Hammon class, as the Court's April 8, 1994 Opinion made clear, no such schedule was proposed and no adequate statements of claims by those to whom Hammon counsel sought to have the money distributed were filed.

**D. Nor is there anything inappropriate about the Special Master's determination to compensate class members on the basis of burdens borne rather than hours worked or services rendered, as neither the Settlement Agreement nor the Court's Decree and Order dictated that a preference be given to one form of compensation over the other.**

■ The Court further finds that there is no merit to counsel's suggestion that a pro rata distribution of the special litigation fund is inappropriate simply because "it does not make reference to hours worked, services rendered, or amounts claimed." The Settlement Agreement and the Court's Decree and Order were clear in providing that the Special Master would have the discretion to award the $100,000 equitably; and there was no specific requirement that a preference be given to those who claimed to have invested hours over those who claimed special burdens.

Under the circumstances of the case, it is clear that the Special Master determined

that an equitable distribution of this money would be achieved by compensating class members for burdens borne during the course of the litigation due to delay in the distribution of the settlement funds. As the Court's April 8, 1994 Opinion explained, the Court finds this approach to be both reasonable and just under the circumstances of this case.

The Court also notes that this determination is particularly appropriate in view of the fact that the claim forms received indicated that the total $100,000 would have been vastly insufficient to compensate all of the class members for hours worked and services rendered. As some form of rationing would thus have been required, the Court agrees with the Special Master that it is preferable to distribute the special litigation fund on the basis of special burdens, rather than attempting to disburse the money as compensation for litigation contributions—the two options provided for by the Settlement Agreement and the Court's Decree and Order.[5]

**E. To the extent that the Special Master's proposed distribution of the money was not contemplated by the Settlement Agreement or the Court's Decree and Order, this is only because none of the parties to the case could possibly have anticipated the numerous delays class members have been forced to endure.**

Nor is there any requirement, as Ms. Burt suggests, that the special burdens warranting compensation be limited to those that preceded the date of the settlement. Hammon class counsel seeks to persuade the Court that it would be a breach of the settlement agreement to permit class members to be compensated for burdens borne subsequent to the signing of the agreement and the entry of the Court's Decree and Order.

---

5. The Court should also take this opportunity to emphasize, once again, that even had the money been distributed on the basis of the claim forms submitted, the schedule proposed by counsel for the Hammon Plaintiffs was wholly unsubstantiated and inadequate, and could certainly not have been approved by the Special Master under the reasonableness standard dictated by the Settlement Agreement and the Court's November 6, 1990 Decree and Order.

Although it is undoubtedly true that none of the parties to the case anticipated that the special litigation fund would be used to compensate class members for the burden of having to endure repeated delays in the distribution of money, *this is precisely because none of the parties contemplated a more than two year delay in the disbursement of funds.*

**F.  For all of the foregoing reasons, the Court finds that the Special Master's proposed distribution appropriately takes into account all of the circumstances present in this case and represents a just determination as to the proper distribution of the special litigation fund.**

Under these circumstances, the Court finds that justice required that the Special Master weigh the class members' claims of burden as a result of delay against their claims for litigation contributions, as he in fact did. In doing so, the Special Master concluded that the enormous delays incurred, the failure of Hammon class counsel to propose any schedule or to provide supporting rationale, and the absence of any documentation that would justify an award of large sums to the few individuals identified by Ms. Burt, all dictated that the individuals who received compensation, but suffered delay in distribution, should share on a pro rata basis in the $100,000 special fund.

In reaffirming the reasonableness of this recommendation, the Court further notes that the District of Columbia concurs in the view that "the filing of numerous frivolous appeals by the Hammon plaintiffs' own counsel ... resulted in a burden to the Hammon plaintiffs borne equally by the class members." *See* Defendants' Opposition at 3. As such, as an officer of the Court, Defendants' counsel indicated his belief that "the Special Master's recommendation regarding the distribution of the special fund ... was fair and reasonable." *Id.* at 3.

**G.  Perhaps most importantly, the Court finds that counsel for the Hammon class has offered no reasonable alternative to the Special Master's proposed distribution, and the suggestions she has made seriously call into question her ethical obligation to fully and fairly represent *all* members of the Hammon class.**

Finally, although this has already been documented at length, the Court again wishes to emphasize that for over three and a half years, Hammon class counsel failed to suggest any schedule for distributing the $100,000 special fund that had a reasonable basis and which could be reviewed by the Special Master under such a standard. During this same time period, the claimants whom counsel did recommend failed to properly document their claims, and certainly failed to adequately justify their requested awards. As such, it was eminently reasonable for the Special Master and the Court to conclude that the only sufficiently documented claims of special burden were those due to the continuing delay in distributing the settlement fund money.

Moreover, with respect to Ms. Burt's continuing assertion that only two class members should receive $77,000 of the special litigation fund, the Court is greatly disturbed at the notion that counsel could make such a recommendation in view of her obligation to fully and fairly represent *all* of the members of the class.

In support of her claim, Ms. Burt argues that these two claimants "appeared at virtually all status calls, hearings, special meetings, including meetings in chambers, and delivered various pleadings to the Court clerk and chambers throughout the six year period of the litigation from 1984 to 1990." Counsel therefore asserts that the "Court could not possibly be surprised at the $77,000 litigation contribution between them."

Unfortunately, counsel's actions over the past few years have led the Court to expect the unexpected, and even such a shockingly inappropriate recommendation no longer "surprises" the Court.[6]

---

**6.** Interestingly, the Byrne Plaintiffs' Response emphasizes that Hammon class counsel's position appears to be based on her belief that her recommendation as to the distribution of the special litigation fund was allegedly "approved" by a "negotiating team" during the negotiation of

the proposed 1989 consent decree. However, as the Byrne Plaintiffs' counsel point out, neither the settlement agreement, nor the Court's Decree and Order contain such a "secret understanding." Thus, although "Ms. Burt's notion that there was some prior agreement as to how the

Thus, after carefully considering the arguments set forth in the instant Motion for Reconsideration with respect to this issue, the Court finds that counsel has offered no new basis for her arguments. The Court therefore reaffirms its conclusion that the Special Master's suggestion as to the distribution of the special litigation fund is both reasonable and appropriate under the circumstances of this case.

## II. *The Court rejects Hammon class counsel's claims that she has been unfairly and improperly denied access to documents under seal and notes that Ms. Burt has been provided with far greater access to information and has been given far more opportunities to participate in the distribution of the settlement fund money than was ever contemplated by the Settlement Agreement or the Court's November 6, 1990 Decree and Order.*

Counsel for the Hammon Plaintiffs also argues that she has been denied access to documents under seal. The Court finds that this claim too is entirely without merit, as Ms. Burt has actually been provided with far greater access to information than either the Settlement Agreement or the Court's November 6, 1990 Decree and Order contemplated.

Indeed, although the Special Master was not bound to provide information to any party concerning the claim forms, he did in fact share these forms with counsel for the Hammon Plaintiffs and invited her to provide any input she wished. The Special Master also sought as much information as he could possibly obtain from counsel for the Hammon class to ensure that his decisions were as accurate as possible, without, of course, violating the privacy rights of the claimants. As set forth in the Court's April 8, 1994 Opinion, however, Ms. Burt repeatedly refused to cooperate with the efforts of the Special Master in this regard.

Moreover, this Court, too, provided Hammon counsel with more than ample opportunity to offer her views as to all pending matters in this case. Unfortunately, Ms. Burt similarly declined to provide the Court with any real assistance, as the Court's April 8, 1994 Opinion makes clear.[7]

As such, the Court is satisfied that Hammon class counsel has been given more access to information than she could have legitimately expected under the Settlement, and that she has been afforded numerous opportunities to present any arguments and information to the Court with respect to all pending issues in this case. The Court need not detail here what is set forth with far greater specificity in the Court's Opinion of April 8, 1994; the Court simply reaffirms its belief that these many efforts to provide counsel with information, and to seek her input, constitute more than an adequate basis upon which to reject Ms. Burt's suggestion that she should have had greater access to documents under seal.[8]

$100,000 fund would be distributed may help to explain her unceasing obstruction of the Special Master's efforts to arrive at a fair and equitable apportionment of the fund," counsel for the Byrne Plaintiffs correctly point out that Ms. Burt's "reliance on such an alleged secret understanding cannot justify her obstructionist behavior." *See* Response of the Byrne Plaintiffs at 6–7.

7. Indeed, the Defendants reasonably urge the Court to "reject counsel's efforts to link her failing to comply with numerous court deadlines and her persistent refusal to cooperate with the Special Master during the claims resolution and fund distribution process to her professed concern over not having obtained access to certain documents under seal." *See* Defendants' Opposition at 4.

8. Moreover, as the Byrne Plaintiffs' Response points out, Ms. Burt's demand for access to documents under seal to enable her to "review the standards used by the Special Master" is especially without merit given the "simple fact that the Special Master did not devise any 'standards' of his own to determine who would receive money from the settlement fund; the Settlement Agreement itself resolved that question with unambiguous objective formulae." Indeed, as indicated above, the settlement agreement only contemplated that Ms. Burt would contribute to the determination of the distribution of the special litigation fund. However, the record indicates that not only did she fail to do that properly, she was in fact afforded an opportunity to review and comment on the claim forms, thereby further weakening her claim that she was improperly denied access to sealed documents.

**III.** *The Court further reaffirms its determination as to the proper distribution of the interest remaining on the settlement fund, as counsel for the Hammon class has again provided no legitimate basis upon which to challenge the Court's previous ruling with respect to this issue.*

To the extent that Hammon class counsel challenges the Court's determination as to the proper distribution of the interest remaining on the settlement fund, the Court also finds that Ms. Burt's objections are without merit.

█ As a preliminary matter, the Court first notes that counsel can hardly challenge the underlying premise upon which this distribution is based. The Court's Order merely provides that the interest be distributed on a pro rata basis in proportion to the amount of money each class member received from the settlement fund. Had the money been distributed without delay, each class member would have been able to earn interest on his or her own share of the settlement. As such, the Court's Order simply endeavors to place class members in a position that most closely approximates the position they would have been in had no delays in distribution occurred.

Moreover, the Court's Decree and Order specifically provided that "interest on the $3,500,000 settlement fund shall accrue to the Hammon plaintiffs for disbursement to individual class members as the Hammon plaintiffs and the Special Master see fit." *See Hammon v. Barry*, 752 F.Supp. 1087, 1100 (D.D.C.1990). As such, the Court can see no basis upon which to object to the Special Master's proposal that the money be distributed on a pro rata basis.

Indeed, it appears that Ms. Burt's sole complaint as to the distribution of the interest concerns only the Court's Order that a portion of this money be used to pay the Special Master's fees. The Court has al-

ready addressed this issue on more than one occasion, and sees no reason to repeat the basis for this decision yet again. *See* April 8, 1994 Opinion at 31–34.[9]

However, the Court does believe that it is important to take this opportunity to note that Ms. Burt's complaints about payment of the Special Master's fees and expenses are entirely inappropriate under the circumstances of this case. A careful review of the record reveals that the Special Master has donated hundreds of hours of his time to this case, so that none of the parties to this litigation would be unfairly injured by delay. The Court greatly appreciates his tireless efforts on behalf of all parties to this litigation, and believes that this sentiment is widely shared by many of the Hammon Plaintiffs whom Ms. Burt herself purports to represent.

**IV.** *The Court further finds that there is no merit to any of the other assertions upon which counsel for the Hammon Plaintiffs seeks to base her instant Rule 52 Motion.*

The remainder of counsel's Rule 52 Motion contains a number of other allegations, many of which are erroneous, and all of which provide an insufficient basis for granting the relief she requests.

**A. There is no merit to Hammon class counsel's suggestion that Gamelia Jackson is not a member of the class.**

In her recent pleading, Ms. Burt again seems to claim that Battalion Fire Chief Gamelia Jackson is not a member of the class, that he was not entitled to any award from the settlement fund, and that his suggestions should have been completely disregarded by the Court and the Special Master for these reasons.

The record, however, is clear that Mr. Jackson is a member of the class, as verified by the Special Master.[10] Moreover, as the District of Columbia points out, Hammon class counsel's "contention that Gamelia

---

9. It is worth repeating, however, that all fees and expenses were solely to be paid out of the interest, and at no time was the principal $3.5 million invaded.

10. *See also* Byrne Plaintiffs' Response at 3–4, noting that Mr. Jackson was unquestionably entitled to a share of the settlement fund under ¶¶ 8–10 of the Settlement Agreement, which provide that the funds are to be allocated on the basis of the length of time a black firefighter was em-

Jackson is not a member of the *Hammon* plaintiffs' class ... is absolutely without merit ... and the majority of the allegations regarding Jackson's status as a member of the *Hammon* plaintiffs' class are baseless." *See* Defendants' Opposition at 4–5.

**B. Nor would counsel's objections to Mr. Jackson's participation in the case provide any legitimate basis upon which to challenge the Special Master's recommendations, even if Mr. Jackson were not a member of the class, as Ms. Burt herself was given ample opportunity to comment on Mr. Jackson's suggestions, yet she repeatedly failed to do so or to set forth any reasonable, alternative proposals.**

More importantly, the Court's April 8, 1994 Opinion made clear that Ms. Burt's objections to Mr. Jackson's participation in this case should not have prevented her from commenting upon his suggestions or those of the Special Master, as she was repeatedly requested to do. As such, it is too late now for Ms. Burt to seek to overturn the Court's determinations on this basis.

Moreover, the Court further notes that even counsel's most recent pleading fails to set forth any reasonable alternative to the Court's proposed resolution of these matters. As such, the Court finds that there is no significance to Hammon class counsel's attempt to question Gamelia Jackson's membership in the class, as she herself has repeatedly failed to offer the Court any reasonable alternative to the proposed distribution of the remaining funds.

**C. Hammon class counsel's unsubstantiated allegations that Ms. Tora Washington was improperly denied compensation under the settlement fund are also without merit, as the record reveals that it was the failure of Ms. Washington (or Ms. Burt to whom she gave power of attorney) to submit a timely claim form that resulted in Ms. Washington's failure to receive compensation from the settlement fund.**

With respect to counsel's claims regarding the failure of Ms. Tora Washington to receive

any compensation from the settlement fund on behalf of her deceased husband, Ronald A. Washington, *See* Rule 52 Motion at 8, the Court first notes that counsel offered no evidence in support of her claim that Ms. Washington was improperly denied funds by virtue of the Special Master's rulings. For this reason alone, the Court finds that such conclusory allegations were unworthy of further consideration.

However, as indicated above, the Court is extremely dedicated to ensuring that the rights of *all* class members are fully and fairly protected, and for this reason determined that it would endeavor to ascertain if, and why, Ms. Washington was denied compensation from the settlement fund.

Upon review of the record, the Court discovered that, approximately one year ago, Ms. Washington submitted a letter to the Court addressing this problem. The Court then forwarded Ms. Washington's letter to the Special Master, who in turn informed Ms. Washington that she had not received compensation as a result of her failure to file a timely claim form (or any claim form for that matter). Copies of all three of these letters are incorporated by reference herein as Appendix A.

Moreover, the Court further takes note of the fact that Ms. Washington's letter indicates that Ms. Burt herself had apparently been given power of attorney to handle this matter on Ms. Washington's behalf. As such, counsel for the Hammon Plaintiffs had numerous opportunities not only to file a claim form, but also to raise the issue of the absence of such a claim, as the Special Master provided Ms. Burt with both summaries and copies of all of the actual claim forms.

Counsel for the Hammon Plaintiffs obviously failed to file a claim form on Ms. Washington's behalf or to notice that such a claim had not been filed; nor did counsel ever seek leave to file a late form on Ms. Washington's behalf. It is thus clear that any problem encountered by Ms. Washington in this re-

ployed, and not upon some showing of actual

discrimination.

gard was as a result of her own, or Ms. Burt's, failure to file a claim, and as a result of counsel's failure to inspect the claim forms that were submitted to ensure that Ms. Washington's form was filed.

As such, the Court finds that there is no merit to counsel's suggestion that Ms. Washington was improperly denied compensation as a result of any action or inaction by the Special Master; and the Court finds counsel's insinuations to this effect to be particularly egregious in view of her own conduct with respect to this issue.

**D. Counsel's contentions with respect to the question of attorneys' fees, the Court's use of the term "Consent Decree," and the inclusion of an "Appearances Page" are all both erroneous and irrelevant to the determinations set forth in the April 8, 1994 Opinion and Order, and thus clearly do not provide any support for Ms. Burt's instant Rule 52 Motion.**

Hammon class counsel's Motion also erroneously suggests that the Court's "finding that 'counsel has received at least $212,000 in interim attorneys' fees' is clearly incorrect." First, the Court notes that Ms. Burt's assertion flatly contradicts the record in this case as set forth in the Court's April 8, 1994 Opinion and Order. *See also* Defendants' Opposition at 5–6. More importantly, the Court notes that the question of attorneys' fees is not essential to the determination of any of the other issues resolved by this Court's Opinion and Order of April 8, 1994 and reaffirmed herein.

Similarly, to the extent that counsel for the Hammon Plaintiffs takes issue with the Court's use of the term "Consent Decree" or its inclusion of an Appearances Page, the Court simply notes that the record with respect to both matters is undisputed, and any

confusion that may or may not have resulted has no bearing upon any of the other issues presented herein.[11]

**V. *Counsel for the Hammon Class has not demonstrated any need for an accounting or for a stay pending a hearing, and both requests must therefore be denied.***

■ Although counsel for the Hammon Plaintiffs had months to respond to the Court's invitations and orders to provide her views as to the proper distribution of the funds in this case, the Court's April 8, 1994 Opinion makes clear that Ms. Burt repeatedly declined to take advantage of these opportunities. For this reason alone, the Court believes that it would be highly improper to now permit counsel for the Hammon Plaintiffs to further disrupt these proceedings by granting the relief requested in her instant motion.

■ Moreover, the Court further finds that her requests are without merit and must therefore be denied. With respect to Ms. Burt's request for an accounting, the Court first notes that the Settlement Agreement and the November 6, 1990 Decree and Order clearly provided that the final decision as to the distribution of the settlement fund was to be made by the Special Master, and provided only that the City would have the right to request an accounting. *See* November 6, 1990 Decree and Order, ¶ 30, 752 F.Supp. 1087, 1119–1120 (D.D.C.1990).

Although the City does not in principle oppose the request for an accounting, the Defendants expressed their belief that this is unnecessary as "the formula for distribution and the numerous submissions by the Special Master and the Industrial Bank already provide for such an accounting." *See* Defendants' Opposition at 5. The Court agrees with the District, and further notes that the

---

11. More specifically, the record with respect to the proposed consent decree is clear to all parties, as it was in fact Ms. Burt who refused to sign the document, even after having stated on a number of occasions that she would in fact do so. *See Hammon v. Barry,* 752 F.Supp. 1087, 1099 (D.D.C.1990). With respect to the inclusion of an Appearances Page with the Court's April 8, 1994 Opinion, the Court does not believe that

any parties to the case were mistakenly led to believe that a hearing was held, as the Appearances Page merely reflects the identities of counsel whose appearance in the case had previously been entered and who submitted briefs with respect to the issues addressed therein. To clarify any possible confusion, however, the Court simply notes that in fact no such hearing was held; nor was one required.

Court itself verified that the totals calculated by the Special Master were correct before the money was disbursed. As such, the Court finds that counsel for the Hammon Plaintiffs has failed to demonstrate any need for an accounting and her request shall thus be denied.

The Court similarly finds that counsel's requests for a stay and for a hearing are both without merit. As demonstrated above, counsel for the Hammon class has offered no legitimate basis upon which to challenge any of the Court's rulings set forth in the April 8, 1994 Opinion and Order.

Moreover, as counsel for the Byrne Plaintiffs point out, Ms. Burt's characterization of the Court's statements in that opinion as "findings of fact" is misleading, because the "findings" to which she objects are merely descriptions of various court proceedings throughout the history of this case. These are a matter of public record; and there was no need, nor is there now, for the Court to hold any sort of evidentiary hearing with respect to them. *See* Response of the Byrne Plaintiffs at 2.[12]

As for the request for a stay, the Court first notes that counsel has merely asked for a stay pending consideration of the instant motion. As this Opinion and Order resolve all of the issues raised therein, the Court sees no need to grant a further stay in this matter.

More importantly, the Court believes that there is no merit to counsel's request for a further delay in the resolution of this case. The Defendants have adamantly opposed counsel's request for a further stay and argue that she has "completely failed to set forth any entitlement to a stay." *See* Defendants' Opposition at 6.[13]

The Court agrees with the District, and for all of the reasons set forth above, and in this Court's Opinion and Order of April 8, 1994, the Court shall refuse to tolerate any more delays in the distribution of the remaining money to members of the Hammon class. Counsel's request for an accounting and for a stay pending a hearing shall thus be denied.

**VI.** ***The Court finds no merit to Hammon class counsel's Motion for Relief from Orders Pursuant to Rule 60(b)(3), as counsel has not only failed to sufficiently document her allegations of fraud, but she has entirely failed to offer any coherent theory upon which to base her request for relief from the Orders of this Court.***

■ As indicated above, on May 25, 1994, counsel for the Hammon Plaintiffs filed a "Motion for Relief from Orders Pursuant to Rule 60(b)(3) F.R.Civ.P." in which she states as follows:

> Now comes the *Hammon* plaintiffs, by counsel, and moves the Court to relieve them and their legal representative from orders of the Court issued from June 18, 1991 through April 27, 1992 and up to and including April 8, 1994 for reason that said orders were procured by fraud, misrepresentation and other misconduct of parties adverse to the *Hammon* plaintiffs' legal rights interests and property.

*See* Hammon Plaintiffs' Rule 60(b)(3) Motion.

The basis for counsel's shockingly broad request to overturn all of the Court's Orders for the past three years appears to be her contention that, subsequent to the filing of her Rule 52 Motion, she received a number of affidavits that demonstrate the existence of a vast "conspiracy" to deprive members of the Hammon class of that to which they are properly entitled under the Settlement Agreement and the Court's Decree and Order.

Hammon class counsel's allegations appear to be primarily targeted at Gamelia Jackson; but her sweeping claims also implicate almost

---

12. The Court notes, with appreciation, that counsel for the Byrne Plaintiffs have verified the Court's account of the history of this case: "with the exception of matters under seal to which *Byrne* counsel were not privy and as to which we are not in a position to comment, *Byrne* counsel can confirm that all of the Court's descriptions in the April 8 opinion of the proceedings in this case are entirely accurate." *See* Byrne Plaintiffs' Response at 2.

13. Defendants also note that no further hearing is warranted in connection with this matter. *See* Defendants' Opposition at 6.

all of the other parties to this case, including the Special Master, the District Defendants, and counsel for the Byrne Plaintiffs:

> Subsequent to the filing of said Rule 52 Motion, *Hammon* counsel received affidavits from several firefighters who Gamelia Jackson purported "to represent" in his letters and petitions.
>
> Said affidavits demonstrate the methodical actions taken by the Special Master, District defendants, and *Byrne* attorneys to strip the *Hammon* plaintiff and the class members that they [sic] represent of the bargain they made in settling the *Hammon* litigation . . .

*See* Hammon Plaintiffs' Rule 60(b)(3) Motion.

The essence of counsel's Rule 60(b)(3) Motion is that "the Jackson petitions which underlie the April 8, 1994 Order of the Court were procured by fraud and misrepresentation." *See* Rule 60(b)(3) Motion at 2–3. In support of this claim, Ms. Burt has attached eight affidavits which she contends offer proof that the various letters and petitions submitted to the Court by Gamelia Jackson were procured without the informed consent of the signatories. However, after carefully examining the evidence proffered by counsel for the Hammon Plaintiffs, the Court remains unconvinced that there is any merit to her Rule 60(b)(3) Motion.

A careful examination of affidavits submitted in connection with the Rule 60(b)(3) Motion reveals that the "evidence" in support of counsel's allegations is highly questionable itself, and certainly does not support Ms. Burt's claim for relief from the Orders of this Court. Not only has counsel produced a mere eight affidavits in support of her position, the Court notes that two of these affidavits appear to have been submitted by the same individual, Rogers L. Massey, albeit addressing different issues.

More significantly, although all of the affidavits purport to be based upon "personal knowledge, information, and belief" the Court has reason to suspect the validity of these documents. For the most part, the

affidavits submitted appear to constitute slightly modified versions of one of two standard or "form" declarations, reciting virtually identical facts in predominately verbatim prose. There is admittedly nothing per se troubling about the use of a standard affidavit when a number of individuals can attest to the existence of the exact same facts or sentiments. However, the Court begins to question the extent to which the affiants even read the statements they were signing when Debra L. Addison signs a sworn statement which includes, as its third sentence, the following assertion: "I am an African–American male."

The Court further finds that the allegations contained within the affidavits offer little support for counsel's Motion. As indicated above, a careful reading of the eight affidavits reveals that they essentially make one of two sets of claims—neither of which appears to have much merit, and certainly neither of which provides any justification for the relief requested by counsel's Rule 60(b)(3) Motion.

The first set of affidavits assert that at some point following a court proceeding in late 1992 or early 1993, Gamelia Jackson approached several firefighters in the hallway outside of the Courtroom and requested their signatures on a petition. The affidavits allege that Chief Jackson presented a piece of paper that had "signature lines only" and assured those involved that the petition "was to be used for the sole purpose of asking the District Court to disburse the settlement funds as quickly as possible."

These affidavits then allege that the signature pages were improperly attached to the "Motion By Hammon Plaintiffs for Public Disclosure of Special Fund Application and of All Powers of Attorneys and Other Agreements Between Counsel and Class Members." [14] The Court first notes that, in many cases, it is difficult to believe that some of the affiants were not aware of the nature of the petition they were signing, because, contrary to the assertion that they were handed blank pages with "signature lines only," their

---

**14.** The affidavits further allege that Chief Jackson submitted several letters to the Court without the authorization of the affiants.

signatures appear on a page of the petition which includes at least four lines of text.[15]

More importantly, even if the allegations contained in these affidavits were all true, there would still be absolutely no basis for overturning this Court's orders as requested in the instant Motion. What counsel for the Hammon Plaintiffs neglects to mention is that the Opinion and Order of April 8, 1994 *DENIED* the "Hammon Plaintiffs' Motion for Public Disclosure of the Special Fund Applications and of All Powers of Attorney and Other Agreements between Counsel and Class Members." Thus, even if a few of the signatures attached to that Motion were improperly procured, class counsel cannot claim any harm as a result.[16]

The second set of affidavits contain two basic claims that also offer no support for the instant Motion. The first concerns a petition sent to Chief Judge Mikva of the D.C. Circuit. With respect to this petition, the Court first notes that each page of the petition contains a re-printed version of the statement addressed to the Chief Judge, and none of the signatories claim to have been unaware of what they were signing. Rather, the allegation with respect to this petition concerns Chief Jackson's decision to attach and submit what the affiants describe as "an undated letter bearing his signature to the front of the Mikva petition; said letter contained various assertions and allegations made allegedly on behalf of those who signed the Mikva Petition."

In reality, what Chief Jackson included with the petition amounts to no more than a "cover letter" paraphrasing the petitioners' statement. The Court is of the opinion that the letter submitted by Chief Jackson is an entirely appropriate summary of the accompanying petition and sees no basis for the allegation that Chief Jackson's letter in any way "misrepresented" the position of the petitioners.

Indeed, a direct comparison of the petitioners' statement and the cover letter enclosed by Chief Jackson reveals the absurdity of this allegation. The Petition reads as follows:

> We the undersigned, who are members of the Hammon class, Civil Action No. 84–903, and have filed claims, do not agree with the efforts of Ms. Joan A. Burt, Esq. to remove Mr. Stephen Saltzburg, Special Master.

> We do not agree with the intent to appeal by Ms. Burt because the Hammon class has not been informed regarding the class benefit of said motion. We assert that our interest is best served by retaining Mr. Saltzburg as Special Master. Further, we maintain that he be authorized to distribute the funds due the Hammon class. We request that you consider our desires when ruling whether to grant the intent to appeal by Ms. Burt.

The letter attached from Chief Jackson states only the following:

> The attached is a list of Hammond [sic] Class Members who wish to voice their objections to the appeal by Ms. Burt of Judge Charles R. Richey's Order to distribute the funds to the Hammond [sic] class members. Furthermore, we want to make it plain to the court that we do not agree with Ms. Burt's efforts to remove Mr. Saltzburg or to impede his efforts to distribute the funds to the class.

Moreover, even if one were to find a significant difference in these two statements, the Court believes that the letter from Chief Jackson is not in the least misleading as it clearly purports to be *his* summary of the

---

15. Although the Court is aware that it possible that the petition papers were altered so that text could be engrafted onto what was previously a blank page, there is no evidence that this was in fact done here. Moreover, none of the affidavits suggest that this was even the case—nor do they offer any explanation of the actual presence of their signatures *underneath text*. The Court also questions the extent to which these individuals can now complain that their signatures were "misused" when they claim to have freely signed "blank pages" without taking reasonable steps to ensure that their signatures would be used as they desired.

16. Nor did the Court take any action on the basis of either of the letters complained of in the affidavits. Moreover, it is also questionable as to whether any "misrepresentation" is even contained therein, as neither letter includes a signature page.

petition to follow. There is thus absolutely no danger of any sort of misrepresentation, as the Chief Judge or any other reader would unquestionably have been able to easily discern what represented the sentiment of the petitioners versus that of Chief Jackson alone.

Perhaps most importantly, counsel for the Hammon class offers absolutely no explanation of the "significance" of this alleged "fraud." It is unclear if this petition ever had any impact on any decision handed down by the Court of Appeals in this case. Nor does counsel explain how this "misrepresentation" she complains of should in any way require this Court to overturn its decisions, especially since the petition she objects to was filed in the Court of Appeals and not the District Court. Indeed, the total lack of any logical connection between her allegations and her requested relief is astounding.

Similarly, the second claim made by this second set of affidavits is equally without merit. These allegations attempt to blame unspecified "notices" allegedly posted in the Fire Department by the Special Master for having "misled" the affiants into thinking that "the only way for the settlement funds to be disbursed in the Hammon case were [sic] to oppose the actions of the Hammon attorney Joan A. Burt."

In support of this claim, however, neither counsel for the Hammon Plaintiffs nor any of the affiants offer even one example of one of these allegedly "misleading" notices. There is certainly no other evidence to support these unsubstantiated allegations; and, again, no explanation or rationale that would lead the Court to grant counsel's motion, even assuming arguendo that her allegations were true.[17]

Indeed, this is perhaps the most troubling part of the instant Rule 60(b)(3) Motion filed by counsel for the Hammon class. In seeking to impugn the actions of Chief Jackson and the Special Master, counsel for the Ham-

mon class appears to be hoping that she can selectively rewrite the history of this case so as to overstate the influence of one or two individuals or events in determining the outcome of this extensive litigation. The facts, however, are clear; and even all of the allegations raised in counsel's motion, if taken together and presumed to be true, would still fail to constitute a serious challenge to the Court's previous orders in this case.

Counsel for the Hammon class fails to acknowledge that, prior to any consideration of the suggestions contained in submissions by Chief Jackson, this Court distributed copies of his letters to all parties to the case, including counsel for the Hammon Plaintiffs, with instructions to comment on the ideas presented therein.[18]  See Court's Opinion and Order of April 8, 1994. At no point did the Court ever assume that Chief Jackson had the authority to speak for each and every member of the class, nor were any of his suggestions adopted at face value. After the Court solicited input from all parties to the case, the Special Master independently evaluated the ideas and proposals he had received, and presented alternative recommendations to the Court as to how the remaining money should be distributed. The Court itself then undertook review of the various submissions and found that the recommendation of the Special Master to disburse the money on a pro rata basis was just and reasonable under the circumstances of the case.

Thus, at no point were the ideas contained in Chief Jackson's submissions adopted on the sole authority of the author or the signatories to the petitions, nor even solely upon the recommendation of the Special Master. As such, even to the extent that Ms. Burt feels she has called into question the actions of Chief Jackson or the Special Master, she has entirely failed to demonstrate how her claims would justify reconsideration of the Court's April 8, 1994 Order, let alone all of

---

17.  Unfortunately, the Court also feels compelled to note that the record in this case may well support the notion that distribution of the settlement funds did in fact require opposition to many of the actions taken by Hammon class counsel.

18.  As with many of the other Orders issued by this Court, counsel for the Hammon Plaintiffs frequently failed to respond to these Orders in a timely or meaningful fashion.

the other Orders issued by this Court over the past three years.

As the Court has repeatedly emphasized, Ms. Burt's objections to the participation of Gamelia Jackson or the Special Master in the processing of this case at no point prevented her from offering alternative recommendations to the Court. Her consistent failure to offer any more "suitable" proposal, preferring instead to launch repeated attacks on all other parties to the case, is well documented and, quite frankly, highly frustrating for the Court.

Finally, the remainder of Hammon class counsel's Rule 60(b)(3) contains a number of other unsubstantiated allegations about alleged "collusion" between the Special Master, the District Defendants, and the Byrne Plaintiffs. The Court finds the majority of these claims to be incomprehensible and the rest to be entirely without merit.

Counsel for the Hammon Plaintiffs has included a selective recitation of the docket sheet in this case as "evidence" of what she terms a deliberate attempt of these "adverse parties" to "try to go around" the Hammon class members and their attorney. *See* Rule 60(b)(3) Motion at 3. Counsel characterizes these events as "hurdles [the adverse parties] had to overcome," but the Court is at a loss to even discern the theory underlying counsel's inclusion of these "facts" in support of her claims. *See* Rule 60(b)(3) Motion at 3–4. Counsel similarly enumerates a laundry list of steps allegedly taken by Special Master "adverse to the interests of the *Hammon* plaintiffs." *Id.* at 4–6. Again, though, counsel offers absolutely no evidence in support of any of the claims included in this latest list of allegations, and the Court shall not waste any further time responding to what are at best wildly speculative accusations, and, at worst, a deliberate attempt to further delay these proceedings by launching unfounded attacks against the other parties to this case.

The Court thus finds that there is absolutely no merit to counsel's Rule 60(b)(3) Motion. Her allegations of fraud and mis-

representation are largely baseless, and in most cases entirely undocumented. The evidence that she does offer is at best questionable, and certainly inadequate to support her claims.

Most importantly, the Court finds that, even if one were to assume, arguendo, that all of her allegations were entirely true, there would still be no basis for granting the requested relief. The Court's decision to distribute the remaining funds on a pro rata basis was based upon an objective, independent analysis of the facts and circumstances presented by this case, and nothing in counsel's instant Motion challenges the underlying reasoning of the Court's decision in any way. Moreover, as counsel has failed, once again, to present the Court with any reasonable alternative to the proposed distribution of these funds, the Court must deny her instant Motion and reaffirm its decision of April 8, 1994.[19]

## CONCLUSION

Upon careful consideration of each of Hammon class counsel's arguments, the response of the Defendants and the Byrne Plaintiffs' counsel, the applicable law, and the entire record herein, the Court has concluded that its Order of April 8, 1994 is consistent with both the Settlement Agreement and the November 6, 1990 Decree and Order. The Court further finds that Hammon class counsel has been given far greater access to information than either of those documents contemplated, and that her persistent failure to assist the Court and the Special Master cannot now be used as a justification for further delaying the disbursement of the remaining money to members of the Hammon class. Counsel has failed to make any showing that would justify a further hearing in connection with this matter, and her pleadings raise no legitimate basis upon which to challenge the validity of the Court's determinations as to the proper distribution of the remaining funds. Accordingly, for all of the reasons set forth in the foregoing Opinion,

---

19. As for the request for relief from Orders of the Court from June 18, 1991 through April 27, 1992, counsel has failed to even suggest any connection between the events recited in her instant Motion and the need to overturn these previous rulings. Needless to say, the Court finds no basis for granting counsel's Motion with respect to any of these other Orders.

and in this Court's Opinion and Order of April 8, 1994, the "Hammon Plaintiffs' Motion to Set Aside the Findings of the Order of April 8, 1994, and to Amend the Order Pursuant to Rule 52, F.R.C.P., and to Issue a Stay Pending a Hearing" must be denied.

With respect to counsel's Motion for Relief Pursuant to Rule 60(b)(3), the Court similarly finds that counsel has failed to offer sufficient evidence of either fraud or misrepresentation to support any of her allegations. More importantly, she has failed to even articulate a coherent theory upon which to base her request for relief, even if the Court were to assume, arguendo, that all of her allegations were true. Nothing in counsel's Motion justifies relief from the Court's Order of April 8, 1994, and certainly nothing set forth therein supports her claim for relief from previous Orders in this case. Hammon class counsel's Rule 60(b)(3) Motion must thus also be denied, and the Court shall issue an Order of even date herewith, consistent with the foregoing Memorandum Opinion.

### APPENDIX A

Letter from Tora Washington to the Court—Received July 26, 1993

Court's Response to Ms. Washington's Letter—Dated July 27, 1993

Response of the Special Master—Dated August 26, 1993

> 320 Gibson Drive
> Oxon Hill, MD 20745
> (301) 567–8196

Honorable Charles R. Richey
United States District Judge
United States Courthouse
3rd Constitution Avenue, NW
Washington, DC 20001

June 26, 1993.

Re: Hammon V. Barry, et al. C.A. 84–903

Honorable Richey:

I am the wife of Ronald A. Washington. He was a member of the District of Columbia Fire Department, a member of the Hammond Case and a victim of discrimination.

The DC Fire Department identified him as victim of discrimination and promoted him to Sergeant in 1985. This court threw out his promotion because he had not reviewed the Affirmative Action Plan in 1985.

As a result of the accumulative discrimination with no relief he died in 1987.

I have learned that the money to which he was entitled has been distributed by your order, however, I have received no compensation, no letter stating why I have not received any compensation, and I have not received anything from Mr. Saltzburg explaining why I have not received any compensation due by my husband and his six children.

I have given Joan Burt, our attorney, the power of attorney to handle this matter. Attorney Burt states she has not yet been permitted to see who was sent money, how much, and who was not sent anything and why.

I thought this matter should be brought to your attention.

Sincerely,
/s/ Tora Washington
TORA WASHINGTON

*United States District Court*

*for the District of Columbia*

*Washington, D.C. 20001*

Chambers of

Charles R. Richey

United States District Judge

(202) 273–0684

FAX: (202) 273–0329

July 27, 1993

Tora Washington
320 Gibson Drive
Oxon Hill, Maryland 20745

Dear Ms. Washington:

Your undated letter regarding *Hammon v. Barry*, Civil No. 84–903, on behalf of your late husband, Ronald A. Washington, is acknowledged. It is forwarded herewith to

Stephen A. Saltzburg, Special Master, who is hereby directed to advise you of any rights you may have under the terms of the Settlement Agreement.

Sincerely and cordially,
/s/ Charles R. Richey
Charles R. Richey

cc: Stephen A. Saltzburg

The National Law Center
George Washington University
720 20th St., N.W.
Washington, D.C. 20052–0001

Stephen A. Saltzburg

Special Master, Hammon v. Kelly, Nos. 84–903 CRR, 85–782 CRR

August 26, 1993

Tora Washington
120 Gibson Drive
Oxon Hill, MD 20745

Re: Hammon v. Kelly, et al., C.A. 84–903

Dear Ms. Washington:

After I received a copy of Judge Richey's letter to you which responded to your letter indicating that you believe that your husband qualified for compensation in this case, I phoned several times before finally reaching you. When we spoke, I explained that neither you nor anyone on your behalf had filed a valid and timely claim form. You indicated, as I understood it, that you gave some form to Ms. Burt approximately a year ago. But, as I mentioned to you, all claim forms had to be submitted to a designated Post Office box on or before January 2, 1991, long before a year ago. In 1990, Judge Richey considered all suggestions from counsel for the class as to how best to provide notice to potential class members, and he provided for the most complete notice that any counsel suggested. There is no way in this or any class action to assure that every person who might make a claim will receive notice, or to determine later whether any particular person actually did or did not receive notice.

But, under the Court's Decree and Order, only those claimants whose claims were received on or before the cutoff were eligible for compensation. Not having filed a timely form, you unfortunately were and are not eligible for compensation.

Sincerely,
/s/ Stephen A. Saltzburg
Stephen A. Saltzburg
Special Master

cc: Hon. Charles R. Richey